THE CITY NATIONAL BANK OF BRYAN V. MRS. NANNIE P. GUSTAVUS.

No. 6885. Decided June 16, 1937.
Rehearing overruled July 21, 1937.
(106 S. W., 2d Series, 262.)

*Henderson & Hoyle,* of Bryan, and *Thompson & Barwise,* of Fort Worth, for plaintiff in error City National Bank of Bryan.

The bank, being a national bank, was without authority to take the deposits of the defendant in error, Mrs. Gustavus, and

make loans thereof for her use and benefit, as same was beyond the corporate power of the bank, and an agreement between the then cashier of said bank and the defendant in error was ultra vires of his duties and not binding upon the bank, and by so acting he became the agent of the defendant in error and was acting adversely to the interest of his employer, the bank. Northside Railway v. Worthington, 88 Texas 562, 30 S. W. 1055, 53 Am. St. Rep. 778; First Natl. Bank v. Commercial Natl. Bank, 99 Texas 118, 87 S. W. 1032; Kenner v. City Natl. Bank, 164 Tenn. 119, 46 S. W. (2d) 46; Teagarden v. Godley Lumber Co., 105 Texas 616, 154 S. W. 973.

*Lawler & Wood, R. Wayne Lawler,* and *W. E. Dyche, Jr.,* all of Houston, and *Oak McKenzie,* of Bryan, for defendant in error Mrs. Nannie Pyrle Gustavus.

MR. JUDGE HICKMAN delivered the opinion of the Commission of Appeals, Section A.

The application of each party for writ of error was granted, resulting in the situation that each is both plaintiff in error and defendant in error. To avoid confusion we shall employ the designations of the trial court wherein Mrs. Gustavus was plaintiff and The City National Bank of Bryan was defendant.

In December, 1921, the plaintiff, a widow, residing in Ballinger, Runnels County, sent through the mail two checks to the cashier of the defendant bank, as cashier and not as an individual, for deposit to her credit in the bank. One check was for $3,500.00, drawn on a bank in Ballinger, and the other was for $2,800.00, drawn on a bank in Dallas. Shortly thereafter she received through the mail deposit slips evidencing that both items had been credited to her account in the bank. As a matter of fact she was credited with only $3,500.00, the cashier crediting the $2,800.00 item to his own account. A few days later the cashier wrote to plaintiff on the stationery of the bank stating that if she wished it to do so, the bank, through him, would lend her funds on deposit to its customers at from eight to ten per cent. interest per annum; would keep all the papers in its vaults just as its own papers are handled, and would collect and annually remit the interest. She was assured that she ran no risk of losing her money, and that the cashier would "safeguard your interest thoroughly."

In reply to this letter the plaintiff gave her permission for the handling of $6,000.00 of her funds in the manner suggested. After the receipt of her letter of acceptance the cashier drew a check on her account for $3,200.00 and placed the same to his

credit in the bank. That withdrawal added to the $2,800.00 item totals $6,000.00, which plaintiff consented for the bank to loan for her. As a matter of fact no loans were ever made, but the entire amount of $6,000.00 was appropriated by the cashier to his own use. The true facts were concealed from the plaintiff in this manner: The cashier represented to her from time to time that the money had been loaned to responsible customers of the bank at eight per cent. interest, and with fair regularity thereafter from year to year there would be deposited to her account $480.00 (eight per cent. of $6,000.00), to evidence which a duplicate deposit slip would be sent her showing that the deposit was for interest collected by the bank on the loans. From time to time plaintiff drew checks upon the bank, but the amount of money checked out by her was less than the amount deposited by the cashier from year to year to her credit as purported interested on the purported loan. In 1924 the plaintiff thought she had enough accumulated in her account for an additional loan of $500.00 and wrote the cashier with regard thereto. After some correspondence the plaintiff was advised by the cashier that he had put out $500.00 of her money on a demand loan bearing eight per cent. interest, that she could call the loan at any time, and that the borrower had the privilege of paying it when he desired. A few months thereafter she received a deposit slip showing that her account had been credited with $528.89, in payment of that purported loan with interest. Later, after the deposit of another annual interest payment of $480.00, her balance amounted to more than $1,000.00, and the cashier purported to make a loan of $1,000.00 for her. As a matter of fact no such loan was made, but the cashier appropriated the $1,000.00 to his own use. From these facts it is disclosed that the cashier appropriated $6,000.00 of the original deposit of $6,300.00 made by plaintiff and $1,000.00 accumulated to her credit from the so-called annual interest payments credited to her account. These transactions covered a period of more than ten years, during which time plaintiff drew checks against her account in the total amount of $3,148.89. In the fall of 1932 the true facts were discovered and the defalcations of the cashier made known, whereupon the plaintiff made demand upon the bank for her money. The demand being refused, this suit followed.

In the trial court upon a jury verdict judgment was rendered for plaintiff for $4,005.15, arrived at in this manner: The bank was charged with $7,000.00 and was credited with $3,148.89, the amount actually checked out by plaintiff during the years over which the transaction extended. To the difference between

these amounts was added interest at the rate of six per cent. per annum from October 10, 1932, the date of her demand. The bank appealed to the Court of Civil Appeals and the plaintiff filed cross assignments of error. That court reformed the judgment of the trial court so as to award the plaintiff recovery of $6,424.73. That amount was arrived at in the following manner: The plaintiff was adjudged to be entitled to recover from the bank the $6,000.00 of her original deposit misappropriated by the cashier with six per cent. interest thereon per annum, not from the date of demand, but from the date of its misappropriation, more than ten years before the demand, but was charged with the sum of $3,148.89 checked out by her. No recovery was allowed for the $1,000.00 item checked out by the cashier in 1925 from the funds accumulated to plaintiff's account by the purported interest payments. 77 S. W. (2d) 565. Both parties filed applications for writs of error and, as noted above, both applications were granted.

A consideration of the record has led us to the conclusion that the judgment of the Court of Civil Appeals should be affirmed. In the main we are in agreement with the opinion prepared for that court by Justice ALEXANDER, but, in view of the contentions here presented, we deem it desirable to write briefly upon certain phases of the case.

■ With reference to the liability of the bank for a return of the original deposit of $6,000, we are in agreement with the opinion of the Court of Civil Appeals and can see no necessity for any further writing upon the question. Plaintiff just as certainly became a depositor in the bank as if she had delivered $6,300.00 in cash to the cashier in his office for deposit and had received deposit slips from him in return.

The questions which have particularly challenged our attention are: (1) Should plaintiff be awarded interest from the date of the misapplication of the $6,000.00 deposit or from the date, more than ten years later, when demand was made upon the bank? (2) Should plaintiff recover the $1,000.00 item misappropriated by the cashier in 1925? (3) Should plaintiff account for the sum of $3,148.89 checked out of the bank by her? While plaintiff's original deposit was $6,300.00, we are treating it as if it were $6,000.00. This for the reason that she withdrew $300.00 of that amount and it is not included in the item of $3,148.89.

■■ The principle is elementary that the making of an ordinary deposit in a bank brings into existence the relation of debtor and creditor between the bank and its depositor, the

title to the money passing to the bank. Goldstein v. Union National Bank, 109 Texas 555, 213 S. W. 584; Kidder v. Hall, 113 Texas 49, 251 S. W. 497. Plaintiff's original deposit was an ordinary deposit, passing the title to the $6,000.00 to the defendant and creating an obligation upon it to pay same to her upon demand without interest. Since no actual demand was made until October 10, 1932, it follows that, had no transactions intervened between the deposit and the demand, plaintiff would be entitled to recover the amount of her deposit with six per cent. interest per annum thereon from October 10, 1932. It is conceded that the agreement between plaintiff and the cashier to the effect that the bank would put plaintiff's money out at interest to its customers was ultra vires as to the bank and therefore not binding upon it. Plaintiff is not entitled to recover, nor does she seek to recover, upon that contract. Neither is the bank entitled to accept benefits therefrom while at the same time repudiating its binding obligation. The rights of the parties should be determined, as nearly as may be done, so as to permit neither to benefit by the contract. To charge the plaintiff with the withdrawals made by her from time to time and award her interest only from October 10, 1932, the date of the demand, would result in permitting the bank to benefit by the ultra vires contract. This is true because it would result in permitting the use by the bank of plaintiff's money for more than ten years without charge. It can not be assumed that plaintiff would have kept her funds on deposit through all these years in a non-interest bearing account. The fraudulent acts and schemes of the cashier doubtless had the effect designed by him of inducing plaintiff not to withdraw her deposit. As soon as she discovered the fraud and deception she made a demand for her money, and it is certain that she would have made a like demand at the time of the first defalcation, had the facts not been concealed from her by the cashier. Her rights are not to be prejudiced either by the contract or by the fraudulent schemes of the bank's cashier. The law will regard that as done which would have been done but for the wrongs of the cashier and determine plaintiff's rights on the basis that demand was made immediately upon the first defalcation.

The Court of Civil Appeals treated the acts of the cashier as a conversion by the bank of plaintiff's funds, and upon that theory awarded interest from the date of conversion. Since the funds belonged to the bank and not to plaintiff at the time of their misapplication by the cashier, there was, strictly speaking, no conversion of her funds. But by determining her rights on the basis of a demand ab initio, the same result is reached.

■ On the other hand to fail to charge plaintiff with the money checked out by her from this account would be to permit her to profit by the transaction with the cashier. Certainly she is not entitled to receive six per cent. interest per annum on her money and in addition thereto the amount paid as purported interest under the contract. It is claimed that the bank should not be permitted to offset its liability with these so-called interest payments, because they were made by the cashier and not by the bank. It is not, strictly speaking, a question of offset. The payments were made and accepted as interest and plaintiff, having accepted same as interest, must credit them upon the legal interest of six per cent. per annum to which she was entitled. Otherwise, the result would be that she would receive the so-called contract interest of eight per cent. and legal interest of six per cent., and in that way profit by the contract.

It is earnestly and ably argued that, at all events, plaintiff is entitled to recover the $1,000.00 checked out of her account by the cashier in 1925. It may be true, as contended, that, regardless of the source from which that sum was derived, the relation of debtor and creditor existed between the bank and plaintiff with respect thereto after it was deposited to her credit. But it appears that there was deposited to plaintiff's account as purported interest under the ultra vires contract the total sum of $4,148.89. If plaintiff is to recover this $1,000.00 item, she should be charged with $4,148.89. By charging her with but $3,148.89, and denying recovery of the $1,000.00, the same result is accomplished.

■ The judgment of the Court of Civil Appeals will be affirmed. Since neither party has been awarded any relief in this Court in addition to that granted in the Court of Civil Appeals, and since each is plaintiff in error here, the costs in this Court should be borne equally by them. The clerk will so assess them.

Judgment of the Court of Civil Appeals affirmed.

Opinion adopted by the Supreme Court June 16, 1937.

Rehearing overruled July 21, 1937.