**NARRELL v. FIRST NAT. BANK OF
TEMPLE et al.**

No. 9965.

Court of Civil Appeals of Texas. Austin.
June 6, 1951.

Rehearing Denied June 27, 1951.

Eldon Mahon, Colorado City, and George W. Leonard, Jr., Sweetwater, for appellant.

Saulsbury, Skelton, Everton & Bowmer, Temple, for appellees.

HUGHES, Justice.

Appellant's statement of the nature and result of the suit is a model of accuracy and brevity, and we copy and adopt it as our own:

"This is a suit upon a check given to the appellant, W. H. Narrell, by H. C. Surghnor, drawn upon the 'H. C. Surghnor Special Account' on deposit in the First National Bank of Temple, Texas. The check was in the sum of Two Thousand Six Hundred Twenty-five and 00/100 ($2,625.00) Dollars, and was given in payment of a certain farm tractor. When the check reached the Temple bank, payment was refused by that bank, and the check was returned through banking channels to appellant's bank at Roscoe, Texas, with the notation that the account on which it was drawn contained insufficient funds for the payment of the check. The Roscoe bank then returned the check to the Temple bank as a collection item; it was retained several days and again returned, the Temple Bank again saying that the funds in the 'H. C. Surghnor Special Account' were insufficient to pay it.

"Appellant filed this suit against the First National Bank of Temple, alleging that the 'H. C. Surghnor Special Account' was established for the purpose of enabling H. C. Surghnor to purchase farm equipment, and that the bank had knowledge of that purpose, and consequently, the check acted as an assignment of that much of the account when it was given. Recovery was therefore sought against the bank. The bank contends that the 'H. C. Surghnor Special Account' was a general account and

that it was not obligated to pay the check because it was never accepted by the bank.

"In the alternative, the appellant alleged that H. C. Surghnor and Oran G. Kimbriel were partners in buying and selling farm machinery, both of their names being on the check in question, and alternative relief was sought against them. In the second alternative, relief was sought against H. C. Surghnor only.

"Upon a trial before the court without a jury, the court denied appellant recovery against the bank, holding the 'H. C. Surghnor Special Account' to be a general account. It further held that H. C. Surghnor and Oran G. Kimbriel were not partners, discharged Kimbriel, and gave appellant a judgment against H. C. Surghnor.

"Appellant has perfected this appeal to this court, and here complains of the action of the trial court in denying him recovery against the First National Bank of Temple."

Appellant has numerous assignments of error but since we have concluded that there is sufficient evidence to support the finding of the trial court that the "H. C. Surghnor Special Account" was a general account it is unnecessary that we notice each assignment separately, as this finding destroys the basis for appellant's suit.

Before proceeding further we wish to emphasize that there is no equity in favor of appellant as against the Bank, by which we mean that no moral obligation rests on the Bank to pay the check in suit. Appellant, in taking the check, did not rely upon any word or deed of the Bank or its agents. All facts tending to show legal liability of the Bank were unearthed by appellant subsequent to the taking of such check.

■ If the "H. C. Surghnor Special Account" was made up of ordinary deposits then the relationship between the Bank and Surghnor was that of debtor and creditor, the title to the deposits passing to the Bank. City National Bank of Bryan v. Gustavus, 130 Tex. 83, 106 S.W.2d 262. Checks drawn against such an account do not operate as an assignment of any part of the funds to the credit of the drawer with the bank and the bank is not liable to the holder unless and until it accepts or certifies the check. Sec. 189, Art. 5947, V.A.C.S. (N.I. A.)

It is not contended that the Bank accepted or certified appellant's check.

■ The deposit of domestic money is prima facie a general deposit and all deposits of money are general unless expressly made specific or special. 6 Tex.Jur., p. 230.

■ Where the depositor and the bank agree, at the time the deposit is made, that the money is to be used for a specific purpose, and for that alone, the relationship of debtor and creditor between the bank and the depositor is not created, the relationship between them being that of principal and agent, the title to the deposit remaining in the depositor. First State Bank & Trust Co. v. First State Bank of Truscott, Tex.Civ.App., 32 S.W.2d 494 (Eastland, Writ Ref.).

■ It is this latter character of deposit which appellant contends was created at the time the H. C. Surghnor Special Account was established. If so, then the Bank was obligated to honor checks drawn on such account for the purposes for which it was created so long as funds deposited thereto permitted. McBride v. American Ry. & Lighting Co., 60 Tex.Civ.App., 226, 127 S.W. 229; 6 C.J.S., Assignments, § 60, p. 1113; 7 American Jur., 387–388.

H. C. Surghnor was a dealer in farm implements and machinery. His operations were extensive and required considerable capital. During the years 1947 and 1948 he borrowed more than five hundred thousand dollars from the appellee Bank. During the latter part of 1948, however, he had financial difficulties and his personal bank account in the Bank became overdrawn and he had outstanding many checks on which payment had been refused for lack of funds.

This was the state of affairs when, on December 23, 1948, the H. C. Surghnor Special Account was opened in the appellee Bank.

With reference to the opening of such account Mr. D. L. George, Assistant Cashier of the Bank, testified:

"Q. Now, state the circumstances that gave rise to the creation of that account. Why was the account created and state the conversation, if any? A. Well, Mr. Surghnor had so many checks coming in and so many telephone calls from dealers and other people that had checks on him all over Texas that were coming in, we could not, the bookkeeping department could not keep up with the account.

"Q. You are speaking of the old account? A. The old account, yes, sir, the H. C. Surghnor account. We had an agreement between Mr. Surghnor and Mr. Draper and myself to open up the H. C. Surghnor Special Account and to route all checks and all deposits through me. We thought that was the only way it could be handled, was for one man in the bank to handle all of his business."

"Q. I will ask you at whose request was the word Special put on this account? A. At the Bank's request.

"Q. Did Mr. Surghnor have anything to do whatever with putting the word Special on this account? A. No, sir.

"Q. Why did the Bank suggest that the word Special be put on the account. A. So that all checks and deposits would be channeled through me and all of the other employees and officers in the Bank would know that I had to okay all checks and deposits.

"Q. All right, did H. C. Surghnor ever tell you, either when he opened this account or at any other time, that this account was to be used exclusively for buying and selling farm machinery or any other specific purpose? A. No, sir."

"Q. Did the Bank and Surghnor ever discuss where the money was to come from that was to be deposited? A. No, sir.

"Q. Did the Bank and Surghnor ever agree that he was to deposit some or all of the money from the farm equipment transactions in the account? A. No, sir.

"Q. When Surghnor opened this account what was said, if anything, between the Bank and Surghnor about a farm machinery check being paid out of this account? A. There wasn't anything said."

"Q. Mr. George, did the Bank ever agree with Mr. Surghnor that the deposits and withdrawals from that account would be limited to Surghnor's farm machinery business? A. No, sir.

"Q. Was anything ever said about that at all? A. No, sir.

"Q. From time to time did Mr. Surghnor ever tell you not to pay certain checks which you had on hand and which had come in on this account? A. Yes, sir.

"Q. Mr. George, except for the fact that all of the checks were channeled through you for your okay on this account, was it handled in all respects just like any other general checking account or any other deposit in your bank? A. It certainly was."

The evidence also shows that the monies deposited to this account were commingled with other assets of the Bank; also that Mr. Surghnor drew on this account for groceries, labor and telephone bills as well as for the purchase of farm machinery. As to his unlimited right to check on this account he testified:

"Q. Mr. Surghnor, if you had given a check on this account for any purpose on earth, whether it was a grocery bill or whatever it was, you had a right to expect that it would be paid, didn't you, out of this account? A. If I gave one on it and the money was there I would have expected it to have been paid."

As previously indicated this evidence is, in our opinion, sufficient to support the finding that the H. C. Surghnor Special Account was a general account, and under the authorities above cited the Bank is not liable for nonpayment of the check declared upon.

It is accordingly ordered that the judgment of the trial court be affirmed.

Affirmed.