**COLLIER MANUFACTURING & SUPPLY, INC., Appellant,**

v.

**INTERFIRST BANK AUSTIN, N.A., et al., Appellees.**

**No. 3-87-239-CV.**

Court of Appeals of Texas, Austin.

April 6, 1988.

Rehearing Denied May 18, 1988.

E. Hazen Woods, Jr., Phillips, Neal & Woods, P.C., Austin, for appellant.

John C. Miller, Austin, for appellees.

Before POWERS, BRADY and CARROLL, JJ.

POWERS, Justice.

Collier Manufacturing and Supply, Inc. appeals from a judgment of the district court dismissing Collier's garnishment proceeding against sums owed by Interfirst Bank Austin, N.A. to Gary T. MacInnis. We will reverse the judgment of dismissal and remand the cause for proceedings not inconsistent with our opinion.

## THE CONTROVERSY

Collier possessed a final and subsisting judgment, in the amount of $3,816.19, against MacInnis. Based on the judgment, Collier applied to the district court for a writ of garnishment to be served Inter-First, alleging that InterFirst was indebted to MacInnis who possessed no other property in the State subject to execution. Tex. Civ.Prac. & Rem.Code Ann. § 63.001(3) (1986). The writ was duly issued and Collier apparently served MacInnis, under Tex.

R.Civ.P.Ann. 21a (Supp.1988),[1] the documents and notice required by Rule 663a, although this is not altogether clear from the appellate record. (The record shows only that the notice, required to accompany the documents specified in Rule 663a, was mailed to MacInnis via certified mail).

Within the time required by the writ of garnishment, InterFirst appeared in the proceeding by written answer, stating that it was indebted to MacInnis in the amount of $2,494.30. About two weeks later, Collier requested that the proceeding be set for hearing on "the merits" at 9:00 a.m. on August 19, 1987. The district clerk mailed postcard notices of the setting to the attorneys for Collier and InterFirst on or about July 14, 1987.

Shortly thereafter, MacInnis (who is an attorney), Collier's attorney, and Inter-First's attorney discussed the possibility of an agreement of settlement and compromise. Collier's attorney mailed to the InterFirst attorney, on July 24, 1987, a proposed written agreement to that end. The agreement did not materialize.

During the week of August 10, 1987, Collier's attorney asked InterFirst's attorney the course of action he wished to pursue—whether toward an agreed judgment in the case without MacInnis, who had not then appeared in the case; toward adjudication of the case, by the trial court, in the hearing scheduled for August 19, 1987; or some other course of action. The attorneys for InterFirst and Collier then agreed to make further efforts to obtain MacInnis' participation in an agreement of settlement and compromise; but, they agreed, if those efforts proved unsuccessful they would "pass" the hearing scheduled for August 19, 1987 and file in the case an agreed judgment awarding Collier the amount of InterFirst's indebtedness to MacInnis. Ma-cInnis did not respond to the telephone calls made by Collier's attorney in an effort to obtain MacInnis' participation and, as the hearing date of August 19, 1987 drew

1. We shall hereafter refer to the Texas Rules of Civil Procedure merely by reference to the rule number.

near, it appeared that he would not participate.

On August 18, 1987, the day before the scheduled hearing, MacInnis filed in the case a document entitled "Objections to Judgment" wherein he objected on a quite erroneous ground (that InterFirst had failed to answer in the case) to the award of any attorneys fees out of the debt owed him by InterFirst. MacInnis did *not* request that the case be dismissed or the writ of garnishment be dissolved. His pleading recited that a copy thereof had been "hand delivered" to Collier's attorney on August 18, 1987. (Collier's attorney later testified that he never received the copy.)

Because the attorneys for InterFirst and Collier had not notified the trial court of their agreement to pass the setting for August 19, 1987, the court called the case that morning as scheduled. Only MacInnis appeared. The trial court signed that same day a judgment dismissing the case and dissolving the writ of garnishment, reciting that Collier, InterFirst, and their attorneys had failed to appear for trial; that MacInnis had moved for dismissal of the case for want of prosecution; and that the case was dismissed for want of prosecution with costs taxed to Collier. The judgment was filed in the district clerk's office that afternoon.

On the next day, August 20, 1987, MacInnis appeared at the office of InterFirst's attorney. He displayed a copy of the judgment and demanded that InterFirst deliver to him the funds in his bank account, which was, of course, the debt that was the object of the writ of garnishment previously served InterFirst. InterFirst's attorney telephoned Collier's attorney and learned that he was not in the city. Thereupon, InterFirst's attorney notified the bank that it could not continue to withhold from MacInnis the sums in his account. InterFirst paid the sums to MacInnis, apparently on that same day.

Collier's attorney quickly learned that the case had been dismissed for want of prosecution and he moved immediately that the judgment be set aside, the case reinstated, and a "new trial" ordered. The court held a hearing on the motion, which MacInnis did not attend although he was notified of it in advance. The attorneys for InterFirst and Collier related in their testimony their agreement regarding the judgment to be awarded in the case and their agreement to "pass" the hearing set for August 19, 1987. The trial court declared that the agreements were of no consequence because the court had not consented to them. At the conclusion of the hearing, the trial court overruled Collier's motion and this appeal ensued. The appellate record contains no findings of fact or conclusions of law.

On appeal, Collier contends the trial court abused its discretion, in the first instance, when it dismissed the case for want of prosecution and dissolved the writ of garnishment; and that the court did so again when it overruled Collier's motion for reinstatement after hearing evidence. InterFirst does not challenge Collier's contentions. The bank contends rather that the controversy is moot because it has paid its debt to MacInnis and, if the trial-court judgment is reversed and the case remanded, the bank will simply file an amended answer reciting payment under that judgment, however erroneous it was, then move for another judgment discharging the bank from any liability.

Neither party disputes that InterFirst paid MacInnis the sums in his bank account. The two basic issues in the appeal are, therefore, whether the trial court abused its discretion, as Collier contends, and whether the controversy is moot, as InterFirst contends. The statements in InterFirst's brief fall somewhat short of confessing error in response to Collier's assignments regarding abuse of discretion. In consequence, we deem it necessary to discuss and decide whether the trial court abused its discretion, in the two particulars claimed by Collier, for the presumption is against such trial-court errors.

## ABUSE OF DISCRETION

■ We consider first Collier's contention that the trial court abused its discretion when it dismissed the case for want of

prosecution and dissolved the writ of garnishment in the same judgment. One may not properly evaluate the trial court's actions without considering the context in which they were taken. We shall, therefore, summarize what the record revealed to the trial court on the morning of August 19, 1987 when the case was called for trial, the parties and their attorneys did not appear, and the court gave its judgment dismissing the case for want of prosecution (apparently on the oral motion of MacInnis, who did appear) and dissolving the writ previously issued under the court's order and findings. *See* Rule 658.

Most significantly, the record revealed to the trial court that Collier was entitled to judgment against InterFirst as a matter of law on the pleadings, in the amount of the bank's indebtedness to MacInnis, because InterFirst had by its answer admitted the indebtedness and the amount thereof and no one had controverted that answer. *See* Rule 668. Rule 673 permitted Collier or MacInnis to controvert InterFirst's answer, but neither had done so because neither had filed in the case an "affidavit stating that he has good reason to believe, and does believe, that the answer of [InterFirst] is incorrect, stating in what particular he believes the same to be incorrect." Rule 673. Collier filed nothing at all, in that regard, and MacInnis had filed only an *unsworn* pleading (his "Objections to Judgment") that did not controvert *any* aspect of InterFirst's answer because MacInnis alleged (erroneously) that InterFirst had *failed* to answer in the case. Because InterFirst's answer had not been controverted, the trial court was not required to formulate any issues to be tried, as Rule 676 directs. Consequently, there was no need for a trial and no need for compliance with the special procedures prescribed in Rule 675 for placing the case *on the trial docket* after notice and *return* of that notice, with the specific contents as set out in that rule. Thus, the setting of the case on "the merits," for August 1987, could not imply any necessity for a "trial" in the ordinary sense although it did, of course, imply a "hearing."

The record revealed, moreover, that the debt owed by InterFirst to MacInnis rested in *custodia legis* but subject to Collier's lien resulting from issuance and service of the writ of garnishment on findings previously made by the trial court which have never been set aside. Rule 658; *Focke v. Blum*, 82 Tex. 436, 17 S.W. 770 (1891); *Saenger v. Proske*, 232 S.W.2d 106 (Tex. Civ.App.1950, writ ref'd).

The record revealed, as well, that no party had moved for dissolution of the writ of garnishment or given the requisite notice that such action was requested of the trial court. InterFirst or MacInnis might have done so, under the specific provisions of Rule 664a, "for any grounds or cause, extrinsic or intrinsic." InterFirst had filed nothing of that character and MacInnis' only pleading in the case did not request such relief or purport to supply the requisite contents of such a motion as set forth in Rule 664a. Consequently, the trial court could not lawfully have acted under authority of Rule 664a in dismissing the case and dissolving the writ of garnishment; and, in fairness to the trial court, we must acknowledge that it apparently did not purport to act on that authority. Rather, the statement of facts on appeal reveals that the trial court purported to act on authority of Rule 165a or the court's inherent authority to dismiss a case for want of prosecution.

Concluding our summary of the record before the trial court at the time it acted, we note that the entire history of the case, as reflected by the record, revealed that it had proceeded with ordinary dispatch and regularity from the filing of Collier's application for writ of garnishment, on June 2, 1987, to InterFirst's answer, on June 29, 1987, and thence to the setting for August 19, 1987 and MacInnis' last-minute appearance in the case by a pleading filed August 18, 1987. No previous hearings had been requested or held in the case.

For the reason previously given, the trial court's decision to dismiss the case and dissolve the writ of garnishment may be justified only under Rule 165a or the

court's inherent power.[2] Under either theory, however, a judgment of dismissal was not authorized in this case *in the absence of previous notice to Collier, which was not given.*

If the dismissal rests upon the power given the trial court in Rule 165a, it was a power burdened by the express provision, in the rule itself, requiring "[n]otice of the court's *intention* to dismiss" and a hearing *before* dismissal to determine whether Collier had "good cause" for its failure to appear at the hearing on August 19, 1987. (emphasis added). If the dismissal rests upon the trial court's inherent power to take such action, the dismissal may only *follow* an opportunity afforded Collier to "show cause" why the case should not be dismissed, whether for a general lack of diligence in prosecution *or* a failure to take some specific action *previously directed* by the court—neither of which appears to be applicable in Collier's case. *Veterans' Land Board v. Williams,* 543 S.W.2d 89, 90 (Tex.1976); *Bevil v. Johnson,* 157 Tex. 621, 307 S.W.2d 85, 86 (1957); *Coven v. Dailey,* 652 S.W.2d 527, 529 (Tex.App.1983, writ ref'd n.r.e.).

These pre-dismissal notices and opportunities for hearing are essential to constitutional due process of law. *See Rotello v. State,* 492 S.W.2d 347 (Tex.Civ.App.1973), *writ ref'd n.r.e.,* 497 S.W.2d 290 (Tex.). It is undisputed that they were not given or afforded Collier before his case was dismissed.

It has been held that a *post*-dismissal hearing, on a motion for reinstatement as authorized in Rule 165a, may satisfy the demands of due process of law. *See, e.g., Knight v. Trent,* 739 S.W.2d 116, 119 (Tex. App.1987, no writ). In Collier's case, however, a post-dismissal hearing would be a meaningless exercise if, as happened here, the debt was lost to Collier immediately on the trial court's judgment of dismissal without notice. Therefore, to secure Collier's right to due process, if he was not to receive a pre-dismissal notice and opportunity to be heard, the trial court was obliged at minimum to postpone dissolution of the writ of garnishment until Collier could be notified and given an opportunity to be heard following the dismissal. This was, of course, not done.

For the reasons stated, we believe it quite clear that the trial court abused its discretion. Conceding that the trial court *had* the power to dismiss the case for want

---

**2.** In *Mingus v. Wadley,* 115 Tex. 551, 285 S.W. 1084, 1087 (1926), the Supreme Court of Texas laid down a principle of statutory construction:

The general rule is that where the cause of action and remedy for its enforcement are derived not from the common law but from the statute, the statutory provisions are mandatory and *exclusive,* and must be complied with in all respects or the action is not maintainable.

(emphasis added). The "cause of action" for garnishment *is* statutory in the sense that it did not exist at common law, the statute prescribes the issues to be determined, and the proceeding is governed by court-made rules promulgated under statutory authority. *See, e.g., Beggs v. Fite,* 130 Tex. 46, 106 S.W.2d 1039 (1937); *Citizens Nat. Bank in Ennis v. Hart,* 321 S.W.2d 319 (Tex.Civ.App.1959, writ ref'd). The rules in question are Tex.R.Civ.P.Ann. 657—679 (Pamp. 1988).

In *Block 145 Limited v. Pace,* 617 S.W.2d 820 (Tex.App.1981, writ ref'd n.r.e.), the court held that the garnishment rules did not provide for the trial court to dismiss *on its own motion* a writ of garnishment; instead, Rule 664a provided the *sole* method and power for the trial court to dissolve or modify a writ of garnishment.

The court in *Pace* so held on the basis of a rule that garnishment was a "species of attachment and, therefore a summary proceeding," so that "the statute governing it should be followed with strictness." 617 S.W.2d at 822. The theory of strictness, in adhering to the methods prescribed by the rules governing garnishment, is established in a long line of cases listed in the single decision cited in *Pace*: *Citizens' Nat. Bank v. Pollard,* 31 S.W.2d 508 (Tex.Civ.App. 1930, no writ).

On either theory—that the garnishment rules prescribe an *exclusive* basis for dissolving a writ of garnishment or that they must be followed with *strictness*—Collier would be entitled to prevail in the present case. We do not find it necessary, however, to pursue an analysis and discussion of these theories. Even on the theory that the trial court *could* dismiss the case, and dissolve the writ, under its inherent power or Rule 165a, we hold for the reasons set out in the text of this opinion that the trial court abused its discretion both in dissolving the writ and in refusing to reinstate the case. For the same reason, we need not discuss Collier's other points of error save to the extent set out in the text of this opinion.

of prosecution, the court was bound nevertheless to *exercise* its power *in accordance with the applicable legal rules*. Whether the trial court dismissed the case in an exercise of its inherent power *or* the power given the court in Rule 165a, the applicable legal rules required that Collier be given notice and an opportunity to be heard *before* dismissal and dissolution of the writ. The trial court's failure to comply with the applicable legal rules constituted an abuse of discretion. *Landon v. Jean–Paul Budinger, Inc.,* 724 S.W.2d 931, 939 (Tex.App. 1987, no writ); *see, e.g., Landry v. Travelers Insurance Company,* 458 S.W.2d 649 (Tex.1970).

Quite apart from the trial court's failure to follow the rules that govern its exercise of discretion in the matter, as those rules are found in Rule 165a and in the common law, we believe the trial court abused in another way its power to dismiss a case for want of prosecution.

The only possible support in the record for the trial court's decision simultaneously to dismiss the case and dissolve the writ lies in two factors: (1) the court's responsibility for the prompt and orderly disposition of court business; and (2) the related factor of punishing the attorneys for their failure to notify or obtain the court's agreement relative to "passing" the case. Against these two factors, however, the court was obliged to assess *other* factors shown by the record: (1) this was not a case "haunted by delay" or one wherein the rectification of a wrong was postponed, in the words of *Rizk v. Mayad,* 603 S.W.2d 773, 776 (Tex.1980), but one that had never been set before and one that had proceeded with ordinary dispatch theretofore; (2) no one, not even MacInnis, had requested dissolution of the writ of garnishment; (3) a dismissal without giving Collier an opportunity to protect its interest would be tantamount to an adjudication against Collier, on the merits, if the writ was immediately dissolved on dismissal of the case; (4) Collier was entitled as a matter of law to judgment on the pleadings without a "trial" because no one had traversed InterFirst's answer; (5) any neglect in not obtaining the court's consent to passing the

case was apparently not the neglect of Collier or InterFirst, but that of their attorneys; (6) and the court's concern for the prompt and orderly disposition of its business, through a proper punishment of the neglectful attorneys, might be entirely satisfied by other sanctions available to the court, apart from punishing *one party alone* (Collier), such as the court's contempt power and its power to fine the attorneys or otherwise punish them, *see Wyatt v. Texas Oklahoma Express, Inc.,* 693 S.W.2d 731, 733 (Tex.App.1985, no writ).

If one concedes the legal relevance of the two factors pertaining to the trial court's concern for its docket and for neglectful attorneys, nevertheless one is compelled to conclude that the trial court exaggerated quite unreasonably those two factors in light of *all the relevant factors* pertaining to a decision whether to dismiss the case for want of prosecution if Collier was not to be protected in some manner—as by continuing the garnishment writ in force for a period of time while Collier obtained an opportunity to explain, if it could, its failure to appear. This *exaggeration of legally relevant factors* constituted an abuse of discretion by the trial court, especially when the court chose not to protect Collier's interests pending notice and an opportunity for hearing. *Landon v. Jean–Paul Budinger, Inc.,* 724 S.W.2d at 940; Friendly, *Indiscretion About Discretion,* 31 Emory L.J. 747, 769–79 (1982).

We hold, for the reasons given above, that the trial court abused its discretion, in the first instance, when it dismissed the case and dissolved the writ of garnishment in the manner chosen by the court. We turn then to Collier's alternative claim that the trial court abused its discretion in overruling Collier's motion for reinstatement.

■ Rule 165a required the court to reinstate the case if Collier could "reasonably" explain its failure to appear at the hearing. In addition to all the matters described previously, the testimony at the hearing was in agreement on the point that the attorneys for Collier and InterFirst had

agreed to "pass" the setting of August 19, 1987. They were entitled to make that agreement under Rule 247, which provides that "[n]o cause which has been set upon the trial docket of the court shall be taken from the trial docket for the date set *except by agreement of the parties....* (emphasis added)." If one assumes that the consent of the court was *also* required, the attorneys made their agreement plain to the court in the hearing on Collier's motion for reinstatement, thereby augmenting considerably the reasons why the trial court should have sustained the motion. We need not consider whether the attorneys' agreement, in and of itself, constituted a reasonable explanation of their failure to appear. For all the reasons discussed in connection with the trial court's dismissal of the case in the first instance, we hold the court erred in not reinstating the case, especially when the agreement was made known to the court and only Collier (and neither attorney) would suffer from denying the motion.

We turn then to InterFirst's contention that we should give it the legal victory, on the ground of mootness, even though we have awarded Collier the moral palm on its contention that the trial court abused its discretion.

### MOOTNESS

◼ We should regard as harmless error the trial court's abuse of discretion if, indeed, the controversy became moot when InterFirst paid its debt to MacInnis immediately upon his presentment of the trial court's judgment dissolving the writ of garnishment. InterFirst contends the controversy *is* moot, stating that on remand it will simply amend its answer to reflect that it now owes MacInnis nothing and Collier cannot in truth controvert that answer so that InterFirst will be entitled to a judgment of discharge. Collier rejoins that InterFirst paid MacInnis at its own risk so that the bank remains liable to Collier *on equitable grounds.* We agree that the issue is one properly determined on equitable considerations. *Moody v. Tips Lumber Co. v. South Dallas Bank & Trust Co.,*

246 S.W.2d 263 (Tex.Civ.App.1952, writ dismissed).

The writ of garnishment served Inter-First on Collier's initiation of the garnishment proceeding instructed that InterFirst not pay MacInnis any debt or deliver him any effects "pending further order of this court." The trial court's judgment of dismissal was, of course, a "further order" of the court in the cause. InterFirst takes the position that, on presentment of the judgment, the bank's sole and entire obligation was simply to pay MacInnis because the judgment declared expressly that the writ of garnishment "no longer has any effect and all funds subject to this Writ are released." Had the bank not done so, Inter-First reasons, it would also have been liable to MacInnis for conversion, wrongful dishonor of his order, and violation of unspecified "federal regulations." Such considerations may apply in some other circumstances but they do not apply here.

One must recall that InterFirst *agreed with Collier to "pass" the setting of August 19, 1987, in deference to an agreed final judgment for Collier in the sum admitted in the InterFirst answer.* MacInnis had not appeared in the case theretofore. On August 20, 1987, nevertheless, MacInnis arrived at the bank and presented the trial court's final judgment in the case. The judgment not only dissolved the writ of garnishment, previously issued to govern InterFirst's conduct regarding its debt to MacInnis, but it also declared the reasons for dissolving the writ:

This matter was set for trial before the Court on August 19, 1987.

The parties, COLLIER MANUFACTURING AND SUPPLY, INC. and INTER-FIRST BANK AUSTIN, N.A., failed to appear for trial.

The Attorneys for the parties also failed to appear.

Upon the case being called for trial, the Attorney for Debtor/Defendant, GARY T. MacINNIS, moved the Court to dismiss for lack of prosecution.

It is ORDERED, ADJUDGED and DE-CREED that the above-entitled case is

dismissed for lack of prosecution with costs taxed to plaintiff.

The judgment thus informed InterFirst, quite explicitly, *that the bank's agreements with Collier had caused the case to be dismissed for want of prosecution* on the motion of MacInnis.

We do not believe that equitable considerations will permit InterFirst's discharge from all obligations relating to its debt to MacInnis when the bank's agreement with Collier, and the failure of *both* attorneys to notify the court of their agreements, procured an abuse of trial-court discretion that would work an injury to Collier *alone* if InterFirst *is* discharged. The agreement between InterFirst and Collier looked not only to the bank's *discharge*, it looked *also* to a *final judgment compelling InterFirst to pay Collier*—a judgment that Collier was entitled to have as a matter of law under the pleadings.

The foundation of all equitable interests is the maxim that "[e]quity regards and treats that as done which in good conscience ought to be done." 2 Symons, Pomeroy's Equity Jurisprudence § 364, 10–11 (5th ed. 1941). This venerable maxim "involves the notion of an equitable *obligation* existing from some cause; of a present relation of equitable right and duty subsisting between two parties;—a right held by one party, from whatever cause arising, that the other *should* do some act, and the corresponding duty, the *ought* resting upon the latter to do such act." *Id.* § 365 at 14 (emphasis in original); *see generally City National Bank of Bryan v. Gustavus*, 106 S.W.2d 262 (Tex.Comm'n App.1937, no writ); *Gaines v. Lee*, 175 S.W.2d 728 (Tex.Civ.App.1943, writ ref'd w.o.m.); *Burgin v. Godwin*, 167 S.W.2d 614 (Tex.Civ.App.1943, writ ref'd w.o.m.); *John Hancock Mut. Life Ins. Co. v. Bennett*, 159 S.W.2d 892 (Tex.Civ.App.1942, writ ref'd w.o.m.).

Before MacInnis presented to InterFirst the trial court's judgment dissolving the writ of garnishment, one may concede that the equities were equal between InterFirst and Collier. As agreed between them, neither attorney had appeared at the setting on August 19, 1987. But when the terms of the judgment presented by MacInnis revealed that the garnishment writ had been dissolved *because* InterFirst and Collier *had* kept that part of the agreement, a new and different duty devolved upon InterFirst—a duty outside but related to its agreement with Collier. By the bank's agreement with Collier, InterFirst had departed from its neutral status as a disinterested and innocent stakeholder who had only the obligation to await any instructions contained in a "further order" of the trial court. InterFirst had agreed affirmatively with Collier as to the substance of what that "further order" would be and how the order would be obtained. Both had acted on that agreement. If InterFirst paid MacInnis, the bank would obtain its discharge as if it had kept its entire agreement with Collier. InterFirst would obtain, in addition, the very savings of time, trouble, and expense that it would have had under its agreement not to appear at the hearing on August 19, 1987. Collier, on the other hand, would *lose* the judgment against InterFirst that it was entitled to receive under the agreement *and* under the pleadings and rules of law applicable to the case; and Collier would lose as well its subrogation right to the funds held by the bank.

We need not decide whether a garnishee must in *all* cases of dismissal and dissolution of the garnishment writ afford the garnishor an opportunity to protect himself against the consequences of an immediate payment of the funds to the judgment debtor—perhaps by supersedeas bond, by requesting the trial court's extension of the garnishor's lien pending motion for reinstatement, or by an appeal with temporary injunction to protect the appellate court's jurisdiction. *Cf. Glassman and Glassman v. Somoza*, 694 S.W.2d 174, 179 (Tex.Civ. App.1985, no writ) (releasing garnished funds on basis of order "signed only minutes earlier is not necessarily the type of innocent conduct which establishes that it would be inequitable to hold the garnishee liable" to garnishor). The facts of the present case are sufficient, in our view, to

establish that the equities lie almost entirely with Collier.

In the present circumstances, we conclude that InterFirst was obliged in equity to give Collier a reasonable period of time to protect its interests before InterFirst paid its debt to MacInnis. Conversely, we cannot admit the logic of InterFirst's claim that it had no obligation to Collier when MacInnis appeared at the bank and demanded payment pursuant to the judgment of dismissal. That logic assumes that InterFirst had successively: (1) shed the *legal* obligations required of a neutral garnishee under the garnishment rules, which InterFirst did by reason of its agreement with Collier; (2) shed any *legal* obligation to appear at the hearing, which InterFirst did by its agreement with Collier to "pass" the hearing; (3) shed its *legal* obligation respecting an agreed judgment, by reason of the trial court's intervening dismissal of the case in an abuse of discretion procured as much by InterFirst's neglect as by Collier's, in their failure to obtain the court's consent; and (4) shed itself of any *equitable* obligation to Collier because it had, by some mystical transfiguration, reassumed the status of neutral and innocent stakeholder under the garnishment rules, obliged only to await and to obey any final judgment rendered by the trial court. We cannot believe that equity will so permit InterFirst to obtain all that it could have gotten under the rules and statute pertaining to garnishment actions, *and* all it could have gotten under its agreement with Collier, without any obligation on its part to perform fully under one or the other.

InterFirst contends we must weigh in its favor the fact that it was legally *compelled* to accede to MacInnis' demand—that the bank's refusal to pay the sums demanded by MacInnis would have subjected the bank to liability for conversion or wrongful dishonor of MacInnis' order to pay, citing for the latter theory unspecified "federal regulations" and Tex.Bus. & Comm.Code § 4.402 (1968). We disagree that such considerations are entitled to any weight in the balancing of equities.

InterFirst's silent premise is that it was bound either to refuse *absolutely* MacInnis' demand or pay the sums demanded by him. The premise is false. Had the bank immediately paid into court the money demanded, we cannot imagine any basis for the bank's liability. *Wall v. Wall*, 181 S.W. 2d 817 (Tex.Civ.App.1944, no writ). The bank was entitled, without being liable for conversion, to make a qualified refusal in good faith to secure a reasonable period of time in which to investigate the rights of the parties. *Bohn v. Travelers Indemnity Company*, 604 S.W.2d 327 (Tex.Civ.App. 1980, no writ). The expression "wrongful dishonor" does not include any "justified dishonor" as expressly provided in comment 2 under Tex.Bus. & Com.Code § 4.402, *supra*, nor does it forbid delay for a reasonable time to make inquiry. *See Henrietta Nat. Bank v. State Nat. Bank*, 80 Tex. 648, 16 S.W. 321, 322 (1891). We will not consider the applicability of any "federal regulations" when InterFirst has not itself done so in its brief—not even to the extent of giving the court a citation to the regulations in question. Rule 414(e); *Rayburn v. Giles*, 182 S.W.2d 9, 14 (Tex. Civ.App.1944, writ ref'd). Finally, we may also be permitted to observe that InterFirst had, by its own previous conduct and with full knowledge, exposed itself to and assumed whatever risks arose on MacInnis' belated appearance in the case and his subsequent demand of the bank. *Wortham v. Thompson*, 81 Tex. 348, 16 S.W. 1059 (1891).

InterFirst also contends that we must weigh in its favor the fact that Collier, and not the bank, set the case for hearing on August 19, 1987. We regard this factor as insignificant because the equities in question arose subsequently, as pointed out above.

For the reasons stated, we hold the controversy is not moot and, having determined the trial court abused its discretion, we reverse its judgment and remand the case for proceedings not inconsistent with our opinion.