R. K. ALLEN, Garnishee, Appellant,

v.

Louis Scott WILKERSON, Receiver of Cedar Park Quarries, Inc., Appellee.

No. 11339.

Court of Civil Appeals of Texas.

Austin.

Nov. 17, 1965.

Rehearing Denied Dec. 8, 1965.

Moursund & Ferguson, Thos. C. Ferguson, Johnson City, for appellant.

Louis Scott Wilkerson, Austin, for appellee.

PHILLIPS, Justice.

This is a garnishment action wherein the garnishee, appellant here, has been found to be indebted to the garnishor's judgment debtor. The garnishor here is the appellee. Garnishor's judgment debtor had been granted a judgment for $109,-000.00 in a prior suit against the Leander Limestone Corporation, said judgment having been transferred to appellee pursuant to a contract approved by the court in said prior suit. Appellee instituted this garnishment proceeding against the appellant as a debtor of the Leander Limestone Corporation. At the conclusion of the trial to the court, the court entered judgment against appellant for $110,670.36. There were no findings of fact or conclusions of law by the trial court in connection with his judgment.

We affirm the judgment of the trial court.

A brief résumé of the facts are as follows: A Texas Corporation named Leander Limestone Corporation was formed in 1946 with five persons equally interested and equally owning the stock. R. K. Allen, appellant here, and Chester Lankford were two of the original incorporators. In 1954, R. K. Allen acquired the stock of the other three incorporators bringing his percentage of the ownership of the capital stock to 80% thereof. Chester Lankford continued to own his capital stock and to remain active in the corporation until his death in 1963. The principal business of Leander Limestone Corporation was the processing of limestone for building purposes.

Another Texas Corporation by the name of Whitestone Lime Company was organized by appellant, R. K. Allen, and Guy E. Green and began doing business in 1956. The majority stockholders of the Whitestone Lime Company (and its successor White Stone & Lime Company) were appellant Allen, his wife, son and daughter, and Guy E. Green, his wife, son and daughter.

In 1961 a receivership proceeding was instituted as to the White Stone & Lime Company in the District Court of Williamson County, Texas.

Garnishor appellee is receiver of Cedar Park Quarries, Inc., having been so appointed by the District Court in Austin in a prior proceeding.

In another suit in the District Court in Austin docketed as No. 92,981–B, one Joe Amberson, Jr., Independent Executor of his father's estate, recovered judgment against Leander Limestone Corporation for the abovementioned sum of $109,000.00. Thereafter, Joe Amberson, Jr. contracted with garnishor appellee to assign this judgment to the garnishor appellee. The receivership judge found that the contract was to the best interest of the receivership

(Cedar Park Quarries, Inc.) estate and approved the contract.

In the case at bar, the writ of garnishment was issued in May of 1964 upon a recited judgment for $109,000.00 in the above-mentioned Cause No. 92,981–B. Appellant Allen answered and the case was tried in Williamson County with the result as announced above.

I.

Appellant Allen's first point of error in this Court is that of the District Court in granting appellee judgment against appellant for $110,670.36 because appellee as garnishor failed to meet the burden of proof resting upon him to establish by a preponderance of the evidence a prima facie case against Leander Limestone Corporation as alleged, and specifically failed to establish a judgment which he was entitled to assert herein or that there was an indebtedness owing by appellant to Leander Limestone Corporation subject to the writ of garnishment, or the amount thereof.

We overrule this point.

The general rule is that, in order to contest a plaintiff's capacity to sue, objection must be made by a plea in abatement in the trial court and cannot be urged for the first time on appeal. 44 Tex.Jur. 2d, Parties, 223–225. Such rule may in some cases not be applicable to a governmental agency which has only the particular capacities specified in the judicially noticed statute creating such agency. Such appears to have been the view taken in Ortiz Oil Co. v. Railroad Commission, Tex. Civ.App., 62 S.W.2d 376, no writ history, decided in 1933, relied upon by garnishee. But the rule has been squarely held applicable by this Court to suit by a receiver, and it now appears required to be applied by virtue of subdivision (c) of Rule 93, Texas Rules of Civil Procedure, adopted in 1940. Roberson v. Board of Insurance Com'rs of Texas, Tex.Civ.App., 171 S.W.

2d 542, 543, pt. 1, er. dism., decided in 1943.

Actually, this receiver did not need a specific grant of authority from the 53rd District Court to try to collect the judgment upon which this suit is based. Once the property interest in such judgment was placed in the receiver's hands, the receiver was authorized by Article 2310, Vernon's Ann.Civ.St.,[1] to sue for collection thereof "without leave of the court appointing him."

Garnishee's assertion that Amberson "could not" assign the judgment to the receiver and that the 53rd District Court lacked "jurisdiction" to authorize the receiver to sue thereon is without merit. The contract and court order approving it do not expressly recite that Amberson was already a party in the receivership case; but such is clearly inferable from the provisions of the fifth paragraph of such contract. But, even if Amberson theretofore had not been a party in the receivership case, he became such when he voluntarily contracted with the receiver subject to the "approval" of the receivership judge. Security Trust Co. of Austin v. Lipscomb County, 142 Tex. 572, 180 S.W.2d 151, 158, col. 2. And thereafter any and all questions relative to the propriety of the receiver's acquisition of such judgment and of all orders as to what he should do with it could be raised only directly in such receivership case, not by collateral attack such as is now made by the garnishee in this Court. Ibid., 180 S.W.2d at 155–157.

Just as an appointment of a receiver by a court having jurisdiction to appoint and proceedings taken in such receivership are not subject to collateral attack (Robins v. Sandford, Tex.Com.App., 29 S.W.2d 969), so also an order authorizing a receiver to institute suit in the same State is not subject to collateral attack. A case very closely in point is Grant v. H. B. Leach & Co., 280 U.S. 351, 50 S.Ct. 107, 74 L.Ed. 470. In that case a defendant, sued in a federal court by an Ohio state court appointed receiver, challenged the receiver's authority to sue. The United States Supreme Court held that an Ohio statute practically identical with our Article 2297, V.A.C.S., gave the Ohio state court "jurisdiction" to determine actions its receiver might bring; and it then held:

"* * * But even if this were not the case, the order specifically authorizing and directing the receiver to bring the action in the [federal] district court was one which the common pleas court had jurisdiction to make in the exercise of its discretion and under the construction which it placed upon the statute; and, as such, was not one which, even if erroneous, was subject to the collateral attack which Leach & Company sought to interpose in the [federal] district court. * * *"

Likewise we overrule the second part of garnishee's first point to the effect that garnishor "failed to establish * * * an indebtedness owing by appellant to Leander Limestone Corporation subject to the writ of garnishment, or the amount thereof." Substantial evidence supports the trial court's ultimate finding that garnishee was indebted to Leander in the sum of $110,670.36 when writ of garnishment was served.

On appeal after nonjury trial, with no request having been made for specific fact findings, it will be presumed that the

---

1. "Art. 2310.  [2146] [1483] Suit by or against
    When property within the limits of this State has been placed in the hands of a receiver who has taken charge of such property, such receiver may, in his official capacity, sue or be sued in any court of this State having jurisdiction of the cause of action, without leave of the court appointing him. If judgment is recovered against said receiver, the court shall order said judgment paid out of any funds in the hands of said receiver as such receiver. Id."

trial court resolved every disputed fact issue in favor of the appellee and that the evidence will be viewed in the light most favorable to the trial court's presumed findings, disregarding all that is contrary thereto. McWilliams v. Muse, 157 Tex. 159, 300 S.W.2d 643.

Garnishee states in his brief that garnishor contended himself with proving that there was a ledger account on the books of Leander Limestone Corporation denominated "Notes and Accounts Receivable R. K. Allen," which began with an entry of "9/30/59 [which was about eight months after R. K.'s and Tom Allen's trip to Argentina].[2] Balance per work sheet" and a debit entry of $43,333.95 * * * and that it showed a present debit balance of $110,670.36—which is the same sum the trial court found garnishee to be indebted to Leander when garnishment writ was served on him in this case.

Garnishor proved such ledger account to the satisfaction of the court. On Tom Allen's deposition taken on May 15, 1964, he testified that he was vice-president and office manager of Leander, that the ledgers and journals of Leander were kept under his supervision, that a certified public accountant checked his work. He produced Leander's accounts receivable ledger. With such ledger then before him he testified that R. K. Allen "has taken money out of the corporation from time to time to reinvest in this Argentinian Project." Referring to an account entitled "Notes and Accounts Receivable R. K. Allen" in the ledger book, Tom Allen testified that such account "is the accountant's way of showing his obligation to the corporation." Tom Allen further testified that such account would be debited when R. K. Allen took money out of the corporation and would be credited with whatever he paid back.

He further testified that R. K. began to take money out of Leander for the Argentina operation "Approximately 1959," that

he (Tom) had check writing authority "since early '59," that by and large he (Tom) signed most of the checks by which R. K. withdrew funds from Leander and that the standard operating procedure was:

"A  He would come to me and tell me to write a check. He was the owner, he was the owner of the corporation, and he had full control of the money and he could tell me what he wanted done and I, as the bookkeeper,—

Q  You followed the orders.

A  Followed the orders."

At the trial, Tom Allen recalled the taking of his deposition, recalled that he had then testified that "as of February 12, 1964, the balance due from Mr. R. K. Allen to Leander Limestone Corporation, is $110,670.36" and that since that date he knew of no more withdrawals from Leander by R. K. nor of R. K. having paid anything to Leander.

R. K. Allen identified a financial statement purporting to reflect Leander's condition at the end of 1963 and testified that the item thereon reading "Accounts Receivable, R. K. Allen, $109,327.96" was a correct statement as of that time.

■ Garnishee contends here that some of the items charged to his account on Leander's books should not have been so charged. He particularly claims that some items in connection with "L. E. Motor Company," a business which he personally bought from a Johnny Hardcastle, should not have been charged to him because, so he claims, such business was later "consolidated" with another corporation by the name of White Stone and Lime Company. It is believed sufficient in reply to such argument merely to note that the parties themselves did treat such charges as proper charges against Allen while Leander was under his dominion and control. And it is also noted that all questions as to the credi-

2. R. K. Allen purchased certain lands in the Republic of Argentina as an invest-

ment, however further details on this venture are not pertinent here.

bility and weight of R. K. Allen's testimony in such regard were for the trial fact finder.

In his pleading upon which he went to trial, garnishee had pleaded that he had borrowed money from Guy Green and that such borrowed money was "channeled" to him through Whitestone and Leander, but that such corporations "were conduits or intermediaries for the transmission of the funds and for no other purpose." A mass of evidence, both testimonial and documentary, was adduced by both sides relative to this question. The trial court resolved it against the garnishee.

Granted that, if one person makes a so called "special deposit" with another, the law will recognize that the relationship between the depositor and the recipient will be a trust and not a creditor-debtor relationship. But, to establish such a relationship it must be affirmatively proved by the party claiming the special deposit that there was a mutual agreement between the depositor and the recipient that the particular funds will be devoted by the recipient to the specially designated purpose. Brand v. R. W. Briggs & Co., Tex.Civ.App., 78 S.W.2d 1048, er. ref. As this Court pointed out in Janner v. Langdeau, Tex. Civ.App., 317 S.W.2d 787, 788, col. 1, er. ref., n.r.e., a promise by the recipient to pay interest is practically conclusive of a general, not special, deposit. And as also pointed out by this Court in Narrell v. First Nat. Bank of Temple, Tex.Civ.App., 241 S.W.2d 361, 362, no writ history, the fact that the recipient did commingle the funds with its other funds is strong evidence against a contention of special deposit.

It is believed sufficient here merely to note that the burden of proof on this question was on the garnishee and let the matter rest there under the rule that, the trial court not having resolved this disputed fact question in favor of the appellant-garnishee, this appellate court will not do so. However, it is noted that a mass of both testimonial and documentary evidence affirmatively established the opposite of garnishee's contention.

## II.

Appellant garnishee's second point of error is that of the trial court in granting appellee judgment against appellant for $110,-670.36 because the indebtedness, if any, owing by appellant to Leander Limestone Corporation was barred by limitation in whole or in part, and Leander Limestone Corporation being barred from recovery the garnishor would likewise be barred.

We overrule this point.

In order for limitations to run against a corporation's right of action against one of its own directors, two things must concur: (1) notice (2) to a disinterested majority of its board members. Although it is not necessary that such notice come to such members in a board meeting (International Bankers Life Ins. Co. v. Holloway, Tex.Sup., 368 S.W.2d 567, 580, pt. 14), such case makes it clear that both notice and the existence of a disinterested majority are fact questions. As the Supreme Court said, 368 S.W.2d at 580:

"* * * there was presented a fact question as to whether the disinterested officers and directors of plaintiff had knowledge of facts sufficient to require them to exercise diligence by using the means available for discovering the personal stock sales activities of the defendants. * * *"

Continuing:

"It is also our view that the present record presents a fact question as to the adversity of interest of [named directors] * * * ."

In this case, there was a four man board (until Chester Lankford's death, whereafter it was only a three man board). Hence, for limitations to run in favor of R. K. Allen, it would be necessary for notice of his withdrawals from Leander to come to three disinterested members. Excluding R. K. be-

cause of his obvious personal interest, that leaves only his two brothers (George and Tom) and Chester Lankford to consider. It thus appears that if the trial fact finder found any *one* of the following facts, such would be decisive against garnishee's limitation plea:

(1) George Allen never had notice of R. K. Allen's withdrawals and swore he did not.

The fact that record of R. K.'s withdrawals was kept in the office would not impute notice thereof to George, who testified he was an "outside man." Whatever conflict of authority on this point there might previously have been, the point was settled in Texas in the aforecited Holloway case wherein the Court held (368 S.W.2d at 580):

"* * * We do not regard the fact that the sales by defendants of their personal stock during the period of April 1, 1955, to September 6, 1955, were reflected in the stock transfer records charges the corporation with notice at such time as a matter of law. * * *"

Such would be merely one of the evidentiary facts to be considered in finding one way or the other on the ultimate fact question (Id.).

(2) Apparently Chester Lankford never had notice of R. K.'s withdrawals. True, R. K. testified that Lankford was "aware" of R. K.'s private contract with Green and that it was "agreeable with" Lankford for R. K. to enter into such private contract with Green. Lankford did not testify and is now dead. Even assuming R. K.'s testimony to be true, it is still not a necessary inference therefrom that Lankford "had full knowledge of all the circumstances." And, in light of R. K.'s personal interest, the trial court may well have discredited such testimony, 62 Tex.Jur.2d, Witnesses, 432. The trial court may have given more weight to testimony that no board meetings were ever held and that Lankford's actual

participation in any of the affairs of Leander appears to have been limited to "production" work at the plant.

The trial court may well have found that either George or Tom, or both, were not disinterested.

■■ While there are some legal relationships which prevent disinterestedness as a matter of law, (see, e.g., Felty v. National Oil Co., Tex.Civ.App., 155 S.W.2d 656, no writ history (transaction between corporations having common directors); Davis v. Nueces Valley Irrigation Co., 103 Tex. 243, 126 S.W. 4, pt. 5 (sale of corporate property to director's wife)), interestedness may exist in fact even in the absence of any of such relationships. In short, interestedness or disinterestedness does not turn on any technical form of legal status; it is a substantial fact question. This was made abundantly clear in the Holloway case (368 S.W.2d 580, col. 2, pt. 18).

■■ Appellant-garnishee argues that limitations ran against Leander because Chester Lankford "could have maintained an action at any time to have recovered on this account, minority stockholder though he was." Whatever right Chester Lankford might have somehow perfected to bring a shareholder's derivative suit for recovery on a corporate cause of action, he himself could neither have either expressly released such cause of action, nor have sued directly on the cause of action, which belonged to the corporation and was under the control of its board of directors. As said in Commonwealth of Mass. v. Davis, 140 Tex. 398, 168 S.W.2d 216, at 221, col. 2:

"* * * Such action must be brought by the corporation, not alone to avoid a multiplicity of suits by the various stockholders and to bar a subsequent suit by the corporation, but in order that the damages so recovered may be available for the payment of the corporations' creditors, and for proportional distribution to the stockholders as dividends, or for such other

purposes as the directors may lawfully determine. [Citing many authorities.]"

▮ And where, as here, the management of a corporation's affairs are de facto under the domination and control of the adversary of such cause of action, or the corporation is de facto powerless to sue on such cause of action because of the lack of a disinterested majority of its board, mere notice to shareholders does not start running of limitations against the corporate cause of action. Whitten v. Dabney, 171 Cal. 621, 154 P. 312; Goldberg v. Berry, 231 App.Div. 165, 247 N.Y.S. 69.

### III.

Appellee garnishee's third, fourth and fifth points of error, briefed together, are as follows:

THIRD POINT: The District Court erred in granting appellee judgment against appellant for $110,670.36 because the undisputed evidence in this case establishes appellant made a contract with Guy E. Green whereby he assumed as his own obligation, payable from a specific source, the payment of $294,483.35 owing by Leander Limestone Corporation, including therein the amount of appellant's withdrawal account with Leander Limestone Corporation, and such corporation having received the benefits of such contract could not have repudiated the same and recovered from appellant, and appellee is in no better position to do so than such corporation.

FOURTH POINT: The District Court erred in granting appellee a judgment against appellant for $110,670.36 because the contract between appellant and Guy E. Green made any debit balance in appellant's withdrawing account on the Books of Leander Limestone Corporation a trust fund to pro tanto reimburse Guy E. Green for money advanced to him to and for the benefit of Leander Limestone Corporation, which contract was approved by 100% of the stockholders of the Leander Limestone Cor-

poration, and acquiesced in by its Board of Directors, and the benefits of such contract having accrued to said Corporation it was bound thereby, and appellee's rights, if any, are subject thereto.

FIFTH POINT: The District Court erred in granting appellee judgment against appellant for $110,670.36 because Leander Limestone Corporation was obligated to the appellant in an amount far in excess of such sum for the reason that appellant had guaranteed the payment of more than $300,000.00 of indebtedness owed by said Leander Limestone Corporation, and had secured the same by liens upon the pledges of his own property, and after default by Leander Limestone Corporation he had substituted himself and his property as the obligor and fund for the payment thereof in a manner acceptable to the principal creditors, and for such reason Leander Limestone Corporation possessed no action against appellant, and appellee was in no better position in respect thereto.

We overrule these points.

▮ We do not feel it necessary to set out the details of the contract between Allen and Green as it did not even purport to be a corporate act by Leander Limestone Corporation. The law is well settled here that where an act, even by a sole shareholder or a private agreement between all shareholders, does not appear to be a corporate act, then it is a complete nullity insofar as having any effect, legal or equitable, upon the corporations' property and contract rights. Parker v. Bethel Hotel Co., 96 Tenn. 252, 34 S.W. 209, 31 L.R.A. 706; Sellers v. Greer, 172 Ill. 549, 50 N.E. 246, 40 L.R.A. 589; 1 Hildebrand on Texas Corporations, 25–26.

The contract did not even purport to release Allen from his general, in personam liability to Leander Limestone Corporation. 13 Tex.Jur.2d, Contracts, 633 Sec. 357.

[25] Even if the other shareholders and directors of Leander had known or had been

agreeable with such contract, that would not operate as a release by Leander of Allen's debt to Leander. Anno. 87 A.L.R. 281.

■ There is a situation where, under some circumstances wherein a corporate act, which is ordinarily within the realm of Board of Directors' powers, may be effected by (or by authority of) unanimous shareholder action. If, however, the other party to a corporate act is a director then the sine qua non of the ultimate effectiveness of such act vis-a-vis the corporation is affirmative pleading, proof, and finding of fairness of the transaction to the corporation. This is so even if the director owns all of the corporation's shares then outstanding. Popperman v. Rest Haven Cemetery, Inc., 162 Tex. 255, 345 S.W.2d 715. However, if there are any creditors of the corporation at the time, then the purported shareholder action will be considered a complete nullity. Aransas Pass Harbor Company v. Manning, 94 Tex. 558, 63 S.W. 627.

■ The answer to appellant garnishee's third and fourth points, in summary, is that the Allen-Green contract does not even purport to relieve Allen of his debt to Leander or effect any assignment of it to Green.

## IV.

Appellant's sixth point is the error of the court in granting the abovementioned judgment because if the judgment is enforced, it will result in appellant having to pay the amount of the debit balance of his withdrawal account twice, once to Guy E. Green and once to appellee, contrary to the policy of the law in such cases.

■ We overrule this point.

As stated above, the Allen-Green contract did not even purport to effect any assignment by Leander to Green of Allen's debt obligation to Leander. Here he is being sued on his debt, now due and mature. If he pays it he will be discharged. 27 Tex.Jur.2d 97, Garnishment, Sec. 140.

## V.

Appellant garnishee's seventh and eighth points, briefed together, are as follows:

SEVENTH POINT: The District Court erred in granting appellee judgment against appellant for $110,670.36 because appellee as a subsequent creditor could not set aside valid action by all the directors and all of the stockholders of Leander Limestone Corporation permitting appellant to withdraw funds advanced for his use by Guy E. Green through the medium of Whitestone Lime Company and Leander Limestone Corporation, or if such action was not authorized by said directors and stockholders in advance, same was acquiesced in by them with full knowledge of all the facts.

EIGHTH POINT: The District Court erred in granting appellee judgment against appellant for $110,670.36 because it amounts to giving a subsequent creditor preference as to division of corporation assets, all of which were previously pledged and mortgaged to other creditors, and which were insufficient as of the date of the judgment sued upon to pay all other creditors and such judgment in full, and the corporation has been rendered inactive thereby.

We overrule these points.

■ With respect to point of error number seven, our answer, set out in more detail above, to the contention that the funds Allen withdrew from Leander Limestone Corporation were not Leander's funds but were funds which were advanced to garnishee by Green, will suffice here.

Appellant's eighth point is apparently an attempt by a debtor to a corporation to avoid payment of his debt by attempting to invoke—in this case, for the first time

on appeal—the theory that corporate assets are a so called "trust fund for the benefit of creditors."

Appellant asserts here the factual conclusion that Leander is "insolvent," that it is not now an "active" corporation, and then he claims that "all of the creditors are entitled to be parties to an action for distribution of its assets" and cites the Orr & Lindsley Shoe Company v. Thompson, 89 Tex. 501, 35 S.W. 473, hereinafter discussed, as authority for such claim.

Appellant's eighth point is a defensive theory not pleaded in the trial court. 3 Tex.Jur.2d 634, Sec. 374.

Just as a defendant in a trespass to try title case cannot justify his withholding possession from the legal title holder by setting up equities of third persons, Pure Oil Co. v. Tunnell, 126 Tex. 57, 86 S.W.2d 207; 56 Tex.Jur.2d 152, Sec. 47, so also a debtor cannot justify his withholding payment of his debt by setting up equities between his creditor and third persons. See American Broadcasting-Paramount Theaters v. Frye, in the New York Court of Appeals, 8 N.Y.2d 232, 203 N.Y.S.2d 850, 168 N.E.2d 669. In an action by a creditor of a corporation against a debtor to such corporation (similar in substance to our garnishment procedure), the debtor contended as garnishee has here. In rejecting such contention, the court said, 168 N.E.2d at p. 671, col. 2, pt. 3:

> " * * * The possible rights of unknown creditors who failed to intervene do not affect the capacity of this creditor to sue or its right to seek reimbursement. * * * A possible recovery by a plaintiff of the full benefit of the statute to the exclusion of each of the other creditors similarly situated should not operate to defeat his right of action. * * *"

Appellant-garnishee's citation of Orr & Lindsley Shoe Co. v. Thompson, 89 Tex. 501, 35 S.W. 473 is not in point.

The Orr case is one of many in Texas that have enunciated the so called "trust fund" doctrine, a doctrine that is designed for the benefit of creditors of, not debtors to, corporations.

We affirm the judgment of the trial court.

ARCHER, C. J., not participating.