United States Court of Appeals,

Fifth Circuit.

No. 92-2460.

FEDERAL DEPOSIT INSURANCE CORPORATION, Receiver of Texas Investment Bank, Plaintiff-Appellant,

v.

Rockleigh S. DAWSON, Jr., et al., Defendants-Appellees.

Oct. 21, 1993.

Appeal from the United States District Court for the Southern District of Texas.

Before REAVLEY, KING, and GARWOOD, Circuit Judges.

KING, Circuit Judge:

The Federal Deposit Insurance Corporation as receiver sued certain directors and officers of a failed bank, alleging that the bank had incurred substantial losses due to their actions and omissions. The district court granted summary judgment in favor of the defendants Rockleigh S. Dawson, Jr., Kirk K. Weaver, and Michael D. Maloy, and the FDIC appeals. We affirm.

I.

The defendants in this action were all directors or employees of Texas Investment Bank, N.A. ("TIB"), a federally insured banking institution organized, existing, and operating under the laws of the United States. On May 21, 1987, the United States Office of the Comptroller of the Currency ("OCC") declared TIB to be insolvent. The OCC ordered TIB closed and appointed the FDIC as receiver. As part of its effort to recover on losses to the federal deposit insurance fund caused by the failure of TIB, the FDIC sued to recover damages allegedly resulting from the negligent discharge of duties by defendants Rockleigh S. Dawson, Jr. ("Dawson"), Kirk R. Weaver ("Weaver"), Michael D. Maloy ("Maloy"), and Wayne C. Desselle ("Desselle") as officers or directors of TIB.

Defendant Dawson became president and chief executive officer of TIB on March 17, 1981, and was elected as a director of TIB on January 19, 1982. He served as a director and as president until his resignation on May 12, 1987. Additionally, he served as chairman of TIB's loan committee from April 28, 1981, until April 28, 1987. Defendant Weaver became a director of TIB on January

19, 1982, and he served as a director until his resignation on April 28, 1987. Defendant Maloy was a loan officer for TIB from January 18, 1983, through April 28, 1987. Additionally, he served as vice-chairman of the loan committee from January 18, 1983, until August 26, 1984. Although there is some dispute, it appears that Maloy was a non-voting advisory director from April 1984 until he was elected as a full board member in 1986 or 1987.

The structure of TIB's organization with respect to its lending function is somewhat complicated. Until April 21, 1982, there was a "Loan and Discount Committee" made up of TIB directors. This committee was not re-elected by the board on that date, and the board did not again establish a board level loan committee until August 21, 1984, when it created the "Executive and Loan Committee." From December 31, 1980, to August 27, 1984, TIB's lending functions were supervised by a loan committee composed of Dawson, Maloy, and other bank officers.

This suit was brought by the FDIC based on the activities of defendant Desselle, who is not a party to this appeal. Desselle was hired by TIB as a loan officer on or about August 31, 1981, and he was elected a vice-president on September 15, 1981. The FDIC alleges that Desselle, Maloy, and Dawson made a series of 82 unsafe and unsound loans beginning on February 18, 1982, and continuing through October 5, 1984. The FDIC also alleges that these loans constituted unsafe and unsound banking practices that should have been detected and prevented by Dawson and the other members of TIB's board of directors. Desselle resigned effective January 1984. The last allegedly unsound loan was made by Dawson on October 5, 1984.

Having been appointed receiver of TIB, the FDIC brought suit against Dawson, Weaver, Maloy, and Desselle on April 2, 1990. The complaint alleged negligence and breach of fiduciary duty on the part of the defendant directors for a number of acts and omissions related to their failure to supervise Desselle. The complaint also alleged that the defendant directors' acts and omissions constituted a breach of a contract formed when each director took his oath of office. The FDIC moved for summary judgment against Desselle, and the district court entered summary judgment against Desselle after he failed to respond.

Dawson and Weaver moved for dismissal and summary judgment as to all of the FDIC's

claims, alleging that the claims were barred by the statute of limitations. On December 10, 1991, the district court granted Weaver's motions for summary judgment and to dismiss; it denied Dawson's motion for summary judgment as moot and granted his motion to dismiss. Maloy then moved for summary judgment and to dismiss, and his motion was granted on May 4, 1992. This appeal followed.

## II.

Because the parties presented matters outside the pleadings to the court and the court did not exclude them in deciding these motions to dismiss and motions for summary judgment, we treat all of the district court's decisions as summary judgment decisions. Fed.R.Civ.P. 12(b), (c); *see also Fraire v. City of Arlington,* 957 F.2d 1268, 1273 (5th Cir.), *cert. denied,* --- U.S. ----, 113 S.Ct. 462, 121 L.Ed.2d 371 (1992). We review the grant of summary judgment de novo, using the same criteria used by the district court in the first instance. *Id.* The evidence and inferences to be drawn therefrom are reviewed in the light most favorable to the non-moving party. *Id.* Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). We note also that, in reviewing the record, we are not bound to the grounds articulated by the district court for granting summary judgment, for we may affirm the judgment on other grounds. *Harbor Ins. Co. v. Urban Constr. Co.,* 990 F.2d 195, 199 (5th Cir.1993).

## III.

The FDIC presents two arguments for reversal. First, it argues that the statute of limitations was tolled during the tenure of the corporate wrongdoers under the doctrine of adverse domination. Second, the FDIC argues that the district court erred by applying the tort statute of limitations to its claim based on the directors' oath of office instead of the longer statute of limitations for breach of contract actions. We address the FDIC's second argument first.

## A.

The threshold issue on this appeal is whether the district court applied the correct statute of

limitations to the FDIC's claims. The Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA")[1] provides a federal statute of limitations for claims brought by the FDIC as receiver. 12 U.S.C. § 1821(d)(14).[2] This statute, however, has been interpreted not to revive stale state law claims acquired by the FDIC. *Randolph v. Resolution Trust Corp.,* 995 F.2d 611, 619 (5th Cir.1993); *FDIC v. Regier Carr & Monroe,* 996 F.2d 222, 225-26 (10th Cir.1993); *FDIC v. Shrader & York,* 991 F.2d 216, 220 (5th Cir.1993); *FDIC v. McSweeney,* 976 F.2d 532, 534 (9th Cir.1992), *cert. denied,* --- U.S. ----, 113 S.Ct. 2440, 124 L.Ed.2d 658 (1993); *see also Resolution Trust Corp. v. Krantz,* 757 F.Supp. 915, 921 (N.D.Ill.1991) (reasoning that a literal reading of the statute would allow the FDIC to "revive claims relating to acts done during the Great Depression" by merely taking receivership of a bank). Under these cases, the district court must first determine whether the claims being brought by the FDIC were viable under the applicable state statute of

---

[1] Pub.L. No. 101-73, 103 Stat. 183 (1989).

[2] 12 U.S.C. § 1821(d)(14) provides:

(A) In general

Notwithstanding any provision of any contract, the applicable statute of limitations with regard to any action brought by the [FDIC] as conservator or receiver shall be—

(i) in the case of any contract claim, the longer of—

(I) the 6-year period beginning on the date the claim accrues; or

(II) the period applicable under State law; and

(ii) in the case of any tort claim, the longer of—

(I) the 3-year period beginning on the date the claim accrues; or

(II) the period applicable under State law.

(B) Determination of the date on which a claim accrues

For purposes of subparagraph (A), the date on which the statute of limitations begins to run on any claim described in such subparagraph shall be the later of—

(i) the date of the appointment of the [FDIC] as conservator or receiver; or

(ii) the date on which the cause of action accrues.

limitations at the time the FDIC was appointed receiver. If the state statute has not yet run, the period provided by 12 U.S.C. § 1821(d)(14)(A) then begins to run. *See, e.g., Shrader & York,* 991 F.2d at 220-27 (holding that a legal malpractice claim brought by the FDIC was time-barred because the Texas statute of limitations had expired before the FDIC was appointed receiver); *FDIC v. Howse,* 736 F.Supp. 1437, 1447 (S.D.Tex.1990) (holding that the period provided in 12 U.S.C. § 1821(d)(14) begins to run when the FDIC is appointed receiver, as long as the state limitations period has not already expired).

The district court applied the correct analysis to the FDIC's claims, first deciding whether the claims had expired under Texas law before the FDIC was appointed as receiver. The Texas statute of limitations for negligence and breach of fiduciary duty is two years. Tex.Civ.Prac. & Rem.Code Ann. § 16.003 (Vernon 1986); *Hoover v. Gregory,* 835 S.W.2d 668, 676 (Tex.App.—Dallas 1992, writ denied). The Texas statute of limitations for contract claims is four years. Tex.Civ.Prac. & Rem.Code Ann. § 16.004 (Vernon 1986). The district court applied the two-year statute of limitations to all of the FDIC's claims, holding that the FDIC's claim for breach of contract actually sounded in tort.

The FDIC argues that the four-year limitations period should apply to its "breach of contract" claim against the appellants for violating their oath of office, in which they promised to diligently execute their duties and neither to violate nor to permit to be violated any law of the United States. According to the FDIC there is a "substantial question" as to whether this claim sounds in tort or contract, and therefore the district court should have applied the longer statute of limitations. *Badaracco v. Commissioner,* 464 U.S. 386, 391, 104 S.Ct. 756, 760, 78 L.Ed.2d 549 (1984) ("Statutes of limitation sought to be applied to bar rights of the Government, must receive a strict construction in favor of the Government.").

There is no substantial question regarding this issue; the law in this circuit is long-settled that claims based upon an oath of office sound in tort. *McNair v. Burt,* 68 F.2d 814, 816 (5th Cir.1934) ("This suit must rest, not upon the oath, but upon the statutory and common-law right to recover for negligence and dereliction of duty in the management of the bank's affairs."). It is well-established

that one panel of our court will not overturn another absent an intervening precedent by our court sitting en banc or a Supreme Court precedent. *Campbell v. Sonat Offshore Drilling, Inc.,* 979 F.2d 1115, 1121 n. 8 (5th Cir.1992). We have discovered no such cases, nor has the FDIC directed our attention to any. The cases cited by the FDIC from other circuits contrary to our holding in *McNair* do not justify a departure from our own precedent. We therefore adhere to our holding in *McNair* that claims based on the oath of office taken by bank directors sound in tort and are subject to the tort statute of limitations.

The district court correctly applied the two-year statute of limitations to all of the FDIC's claims. The FDIC was appointed receiver no earlier than May 21, 1987. The unsound banking practices on which this suit is based ended in 1984. Unless there exists some reason to toll the statute, the district court was correct to grant summary judgment in favor of the appellees based on limitations.

B.

The FDIC argues that the doctrine of adverse domination tolled the statute of limitations in this case so that the claims it acquired upon being appointed receiver were not time-barred. Generally a statute of limitations begins to run against an action against directors of a corporation for malfeasance or nonfeasance from the time of the perpetration of the wrongs complained of. 3A Stephen M. Flanagan & Charles R.P. Keating, *Fletcher Cyclopedia of the Law of Private Corporations* § 1306 (1986). The doctrine of adverse domination, however, tolls the statute of limitations for as long as a corporate plaintiff continues under the domination of the wrongdoers. *Id.* § 1306.2. The FDIC argues that the doctrine of adverse domination made this case inappropriate for summary judgment. Before proceeding to the merits of this argument, however, we must resolve several preliminary disputes.

*Standard of Review*

The parties disagree as to the appropriate standard of review of the district court's decision on this issue. The FDIC argues that we should apply the ordinary de novo standard to the adverse domination issue because the district court ruled on the issue by way of granting summary judgment.

The appellees, on the other hand, argue that we should apply an abuse of discretion standard because adverse domination is an equitable doctrine. In the past we have applied the de novo standard of review to similar facts. *Cruz v. Carpenter,* 893 F.2d 84, 87 (5th Cir.1990) (reviewing de novo a summary judgment granted by a district court over the plaintiff's assertion of the adverse domination doctrine). Because the district court held that equitable tolling was unavailable as a matter of law and did not withhold equitable tolling simply as a matter of discretion, we follow *Cruz* and apply the de novo standard of review.

### Waiver

Next, appellee Weaver raises the argument that the FDIC may not rely on adverse domination because it did not plead the doctrine in either its original or its amended complaint. We note that the pleading requirements in federal court are governed by Federal Rule of Civil Procedure 8 rather than by state law. *Simpson v. James,* 903 F.2d 372, 375 (5th Cir.1990). Professors Wright and Miller have observed that raising the limitations defense in a motion to dismiss may easily be premature because facts tolling the running of the statute do not necessarily appear in the complaint. *See* 5 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1277 (1990) ("[I]n practice, courts that allow the adjudication of affirmative defenses on a motion to dismiss or for judgment on the pleadings are converting these motions into summary judgment motions and normally will give all parties the opportunity provided by Rule 56 to present pertinent evidentiary material to the court."). The court properly allowed the parties to present affidavit evidence with the motions and responses and treated the motions as for summary judgment. Fed.R.Civ.P. 12(b), (c). Weaver's contention is without merit.

### State or Federal Law?

An important preliminary issue not specifically addressed by the parties is whether state or federal law governs the FDIC's assertion of the adverse domination doctrine. The Tenth Circuit has squarely held in a similar case that the question of whether the state's statute of limitations was equitably tolled was a question of federal law. *Farmers & Merchants Nat'l Bank v. Bryan,* 902 F.2d 1520, 1522 (10th Cir.1990). Under the *Bryan* court's analysis, when the FDIC brings a claim against

the directors of a failed bank, the trial court should "borrow" the appropriate state statute of limitations and apply it to the FDIC's claims. *Id.* Under a line of precedent traceable to the case of *Holmberg v. Armbrecht,* 327 U.S. 392, 397, 66 S.Ct. 582, 585, 90 L.Ed. 743 (1946), the *Bryan* court also held that the question of equitable tolling remained one of federal law, despite the borrowing of the state statute of limitations. Thus, the *Bryan* court adopted the adverse domination doctrine as part of the federal common law of the Tenth Circuit and applied it to the FDIC's claims. *Id.* at 1522-23.

We are not convinced that the *Bryan* court is correct in its statement that federal equitable tolling principles apply when federal courts borrow state statutes of limitations. As the Seventh Circuit has recently noted, the continued vitality of *Holmberg* and its progeny is in doubt after the Supreme Court's decisions in *Board of Regents v. Tomanio,* 446 U.S. 478, 100 S.Ct. 1790, 64 L.Ed.2d 440 (1980), and *Johnson v. Railway Express Agency,* 421 U.S. 454, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975). *See Smith v. City of Chicago Heights,* 951 F.2d 834, 839 (7th Cir.1992). These Supreme Court cases have held that, when state statutes of limitation are borrowed, state tolling principles are to be the "primary guide" of the federal court. *Johnson,* 421 U.S. at 465, 95 S.Ct. at 1722. The federal court may disregard the state tolling rule only if it is inconsistent with federal policy. *Tomanio,* 446 U.S. at 485-86, 100 S.Ct. at 1795-96. The *Bryan* court thus misread the current law regarding the proper source of tolling rules for federal courts that borrow a state statute of limitations.[3]

Wholly apart from the flaws in the *Bryan* court's reasoning, we disagree with its holding for the more fundamental reason that the federal court is not "borrowing" a state statute of limitations at all in these cases brought by the FDIC under FIRREA. As was well said in *Howse,* the first step in the analysis of the limitations issue is whether the applicable state statute of limitations had already expired when the FDIC acquired the claim. *Howse,* 736 F.Supp. at 1440. That is, because the FDIC is merely acquiring the claims held by the failed bank, the issue is whether the bank would be

---

[3]*But see Smith,* 951 F.2d at 840 (stating that *Johnson* and *Tomanio* do not necessarily prevent a federal court from applying both state and federal tolling principles).

time-barred if it tried to sue its directors in state court on the date of the FDIC's appointment as receiver. Only if the bank's claims are still viable under state law on that date does the limitations clock start to run anew under FIRREA's limitations provision. Because this step of the analysis is purely a question of state law, there is no justification for applying federal equitable tolling principles to pre-receivership events. If the FDIC is to toll the state statute of limitations prior to its appointment as receiver under the adverse domination doctrine, it must show the district court that the state law of adverse domination would permit tolling. Thus, we decline to follow the approach of the *Bryan* court, and we hold that the Texas law of adverse domination applies.

*Texas Law of Adverse Domination*

Having determined that Texas law governs the application of the adverse domination doctrine in this case, we must next determine the contours of that doctrine in Texas. As will be seen, Texas case law on the topic is sparse, and our interpretation of Texas law will be informed by modern trends in adverse domination law from other jurisdictions. We focus on three questions of paramount importance in this case: (1) How completely must the wrongdoers dominate their corporation in order to trigger adverse domination tolling? (2) Must a plaintiff relying on the adverse domination doctrine sue all allegedly culpable directors? (3) How culpable must a director's conduct be before he will be considered a "wrongdoer" within the meaning of the adverse domination doctrine?

(1)

Two competing theories have emerged with respect to the showing a plaintiff must make in order to establish "domination" of a corporation by wrongdoers. The more difficult test is the "complete domination" test, under which a plaintiff who seeks to toll the statute under adverse domination must show "full, complete and exclusive control in the directors or officers charged." *Mosesian v. Peat, Marwick, Mitchell & Co.,* 727 F.2d 873, 879 (9th Cir.) (quoting *International Rys. of Cent. Am. v. United Fruit Co.,* 373 F.2d 408, 414 (2d Cir.), *cert. denied,* 387 U.S. 921, 87 S.Ct. 2031, 18 L.Ed.2d 975 (1967)), *cert. denied,* 469 U.S. 932, 105 S.Ct. 329, 83 L.Ed.2d 265 (1984). Once the facts giving rise to possible liability are known, the plaintiff must effectively negate the possibility that an informed stockholder or director could have induced the corporation to sue. *Id.*

Other courts have taken a more prophylactic approach known as the "majority test." Under this approach, the plaintiff need not show that the wrongdoers completely dominated the corporation, but rather must show only that a majority of the board members were wrongdoers during period the plaintiff seeks to toll the statute. *Howse,* 736 F.Supp. at 1441-42; *Federal Sav. and Loan Ass'n v. Williams,* 599 F.Supp. 1184, 1193-94 (D.Md.1984). These cases reason that the mere existence of a culpable majority on the board is so likely to preclude the corporation from filing suit against the wrongdoers that tolling is thereby justified. *See, e.g., Williams,* 599 F.Supp. at 1194. Perhaps an even stronger argument for the "majority test" is the possibility of concealment:

> As long as the majority of the board of directors are culpable they may continue to operate the association and control it in an effort to prevent action from being taken against them. While they retain control they can dominate the non-culpable directors and control the most likely sources of information and funding necessary to pursue the rights of the association. As a result it may be extremely difficult, if not impossible, for the corporation to discover and pursue its rights while the wrongdoers retain control.

*Id.* at 1193-94 n. 12.

We agree with the *Howse* court that Texas follows the "majority" version of the adverse domination doctrine. *Howse,* 736 F.Supp. at 1441. The controlling case is *Allen v. Wilkerson,* 396 S.W.2d 493 (Tex.Civ.App.—Austin 1965, writ ref'd n.r.e.). As the *Allen* court plainly stated, "In order for limitations to run against a corporation's right of action against one of its own directors, two things must concur: (1) notice (2) to a disinterested majority of its board members." *Id.* at 500; *see also id.* at 501 ("[W]here ... the corporation is de facto powerless to sue on such cause of action because of the lack of a disinterested majority of its board, mere notice to shareholders does not start running of limitations against the corporate cause of action."). *Allen* thus demonstrates that Texas law is in accord with the "majority" version of the adverse domination rule. The FDIC's burden, therefore, was to raise a genuine issue of fact as to whether a majority of TIB's board was composed of wrongdoers through May 21, 1985, two years before the FDIC's appointment as receiver.

(2)

The issue most hotly contested by the parties is whether a plaintiff seeking to toll the statute of limitations under the adverse domination doctrine must sue all allegedly culpable directors. The FDIC argues that there is no requirement that all culpable directors must be sued in order for adverse

domination to apply, although plainly the FDIC would still bear the burden of proving that a majority of the directors was culpable to obtain the benefit of the adverse domination doctrine. The appellees, on the other hand, argue that the cases indicate that all directors constituting the culpable majority must be sued.

Again, *Allen* provides this court with the necessary guidance. In *Allen,* the plaintiff was the creditor of a corporation, and he sued one member of the corporate debtor's four-person board for withdrawing funds from the corporation's account. *Id.* at 500-01. The case was tried to the court, and the defendant raised limitations as a defense. The trial judge granted judgment in favor of the plaintiff without making findings of fact, thereby implicitly holding that the statute had been tolled. *Id.* at 496, 500. The court of civil appeals affirmed, holding that the trial judge could properly have tolled the statute because there was sufficient evidence that one of the three non-defendant directors was also not "disinterested." *Id.* at 501. *Allen* thus plainly demonstrates that a plaintiff may sue only a minority of the board and still assert adverse domination to toll the statute of limitations under Texas law.

The appellees urge that the *Allen* rule will work injustice to defendant directors because it will force them to defend the non-defendant directors when those directors have neither the standing nor the incentive to provide their own defense. The FDIC responds that it must be free to make independent litigation decisions regarding which directors it will sue and not sue. As the FDIC points out, there may be a host of reasons for it to choose to sue less than a majority of the board, such as a prior or pending discharge in bankruptcy, prior settlement of the claim or a prior restitution order, pendency of criminal proceedings against an individual or entity, judicial economy, and cost-effectiveness.

In response to the appellees' concerns, we note that the plaintiff still bears the burden of proving that a majority of the board consisted of wrongdoers for the relevant time period; the *Allen* rule does not shift onto the defendants the burden of proving that a majority of the board was *not* culpable. Nor is it necessarily true that the non-defendant directors have no incentive to fight the plaintiff's allegations that they were culpable. If shown to be culpable, the non-defendant directors

could possibly be held liable to the defendant directors for contribution, or could later be joined as defendants themselves. In any event, our responsibility here is to apply Texas law as it exists, not to make policy decisions about what that law should be. The district court incorrectly assumed that the adverse domination doctrine could not apply because the FDIC sued fewer than a majority of TIB's board of directors.

(3)

The final issue is whether Texas law would allow a plaintiff to establish the adverse domination doctrine by proving that a majority of a corporation's directors was merely negligent. We phrase the issue in this manner because our review of the summary judgment evidence shows that the FDIC raised an issue of fact with respect to whether TIB's board may have been negligent in supervising Desselle's lending activities. The FDIC filed with the district court the affidavit of an expert witness, William Watkins, who reviewed numerous TIB documents and OCC reports regarding TIB. According to the Watkins affidavit, the OCC cited TIB several times for serious deficiencies in its lending operations between January 1982 and May 1987. The TIB board "knew of and discussed at numerous board meetings the serious problems disclosed in the OCC examination reports between May 1982 and April 1987." In particular, Watkins opined that it was a "serious deficiency" for the TIB board to delegate oversight of the lending function to a loan committee composed entirely of internal bank employees up until August 1984. From these facts, we conclude that the FDIC raised a genuine issue of fact as to whether the non-defendant directors of TIB may have been negligent, but that it did not produce any evidence that the non-defendant directors were active participants in wrongdoing or fraud.

Texas case law provides little guidance to this court on this issue. Plainly in *Allen* the defendant director, who was sued for withdrawing funds from the corporation's accounts, acted with more than mere negligence. *Allen,* 396 S.W.2d at 500-01. In *International Bankers Life Ins. Co. v. Holloway,* 368 S.W.2d 567 (Tex.1963), the other Texas case cited by the FDIC, the defendant directors were charged not only with breach of fiduciary duty and mismanagement, but also with conspiracy, misappropriation of corporate funds, and the usurpation of corporate opportunities. *Id.*

at 570. No Texas case comes to light in which the adverse domination doctrine has been invoked based on the mere negligence of a majority of a corporation's directors.

We therefore turn to the law of other jurisdictions in order to predict how a Texas court would decide this issue. Before doing so, we remind ourselves that statutes of limitations are themselves expressions of important legislative policies and should not be judicially abrogated without due consideration of those policies. As the Texas Supreme Court has stated, statutes of limitations

> afford plaintiffs what the legislature deems a reasonable time to present their claims and protect defendants and the courts from having to deal with cases in which the search for truth may be seriously impaired by the loss of evidence, whether by death or disappearance of witnesses, fading memories, disappearance of documents or otherwise. The purpose of a statute of limitations is to establish a point of repose and to terminate stale claims.

*Murray v. San Jacinto Agency, Inc.,* 800 S.W.2d 826, 828 (Tex.1990) (citing *Safeway Stores, Inc. v. Certainteed Corp.,* 710 S.W.2d 544, 545-46 (Tex.1986)). We consider also the longstanding Texas rule that the tort statute of limitations begins to run when the tort is committed, absent a statute to the contrary or fraudulent concealment. *Atkins v. Crosland,* 417 S.W.2d 150, 153 (Tex.1967) (citing *Quinn v. Press,* 135 Tex. 60, 140 S.W.2d 438 (1940)).

The development of the adverse domination doctrine under state law in recent years has occurred almost exclusively in federal courts, with many district courts predicting in the absence of controlling state precedent that the states in which they sit would adopt the doctrine. *See, e.g., Resolution Trust Corp. v. Kerr,* 804 F.Supp. 1091, 1094, 1097 (W.D.Ark.1992); *Resolution Trust Corp. v. Hecht,* 818 F.Supp. 894, 899 (D.Md.1992); *FDIC v. Hudson,* 673 F.Supp. 1039, 1043 (D.Kan.1987). Federal district courts have liberally applied the doctrine in favor of government-appointed receivers when they sue the directors of a failed bank, regardless of the nature of the claims. The court in *Hecht* applied the doctrine in a case in which the RTC alleged breach of fiduciary duty, negligence, gross negligence, and breach of contract, but did not allege any form of self-dealing or fraudulent conduct. *Hecht,* 818 F.Supp. at 896, 898. More notably, the district court for the district of Minnesota has applied adverse domination tolling to the FDIC's claims against the directors of a failed bank based on negligence alone. *FDIC v. Carlson,* 698 F.Supp. 178, 180 (D.Minn.1988). Under the *Carlson* approach, adverse domination tolling could be available to the

FDIC in the instant case.

We do not believe that Texas courts would extend the "very narrow doctrine," *Shrader & York,* 991 F.2d at 227, of adverse domination to cases in which the wrongdoing by a majority of the board amounts to mere negligence. To do so would effectively eliminate the statute of limitations in all cases involving a corporation's claims against its own directors. Taking our own case as a paradigm, it could almost always be said that when one or two directors actively injure the corporation, or profit at the corporation's expense, the remaining directors are at least negligent for failing to exercise "every precaution or investigation." *Holloway,* 368 S.W.2d at 580. If adverse domination theory is not to overthrow the statute of limitations completely in the corporate context, it must be limited to those cases in which the culpable directors have been active participants in wrongdoing or fraud, rather than simply negligent.

California cases such as *Burt v. Irvine Co.,* 237 Cal.App.2d 828, 392 (1965), support our conclusion. In that case the court described the adverse domination doctrine by saying that "it is generally held that an action *for fraud* committed against a corporation is tolled for the period that those responsible for the fraud remain in control of the corporation." *Id.* 47 Cal.Rptr. at 417 (emphasis added) (citations omitted). Further, "[t]he principle does not apply after discovery of the fraud by a protesting stockholder, and *cannot be applied to a cause of action predicated upon negligence.* " *Id.* (emphasis added) (citation omitted); *see also Whitten v. Dabney,* 171 Cal. 621, 154 P. 312, 315 (1915) ("So long as the corporation itself remains under disability and is powerless to act by virtue of the fact that its control is in the hands of a board of directors accused of participation in the frauds, the statute of limitations does not run against it.").

The facts of the instant case demonstrate that the adverse domination theory is inappropriate when the majority of the board is merely negligent. The FDIC's own evidence tended to show that most of TIB's directors may have been negligent in failing to supervise the lending functions. Yet, at the same time, the board never concealed its "serious deficiencies" from examination by the OCC or anyone else. Even after the OCC notified TIB's board of its shortcomings in supervising TIB's lending function, there is no evidence to suggest that an organized majority coalesced to prevent any

other parties from discovering the problems. Thus, the danger of fraudulent concealment by a culpable majority of a corporation's board seems small indeed when the culpable directors' behavior consists only of negligence, and the presumption of such concealment that underlies the adverse domination theory is unwarranted.

We therefore hold that, under Texas law, a corporate plaintiff cannot toll the statute of limitations under the doctrine of adverse domination unless it shows that a majority of its directors was more than negligent for the desired tolling period.[4] Because the FDIC's summary judgment evidence, viewed in the light most favorable to the FDIC, showed only negligence on the part of the majority of TIB's board of directors, summary judgment in favor of the defendants was proper.

IV.

For the foregoing reasons, we AFFIRM the judgment of the district court.

---

[4]We need not address the issue of precisely how culpable a majority of directors must be before adverse domination tolling is available, and we accordingly express no opinion on the subject beyond today's holding that mere negligence is not enough.