**RESOLUTION TRUST CORPORATION,**
**Plaintiff,**

v.

**Gene PHELPS, et al., Defendants.**

**Civ. A. No. H–92–734.**

United States District Court,
S.D. Texas,
Houston Division.

Aug. 18, 1994.

Bruce A. Atkins, Houston, TX, for plaintiff.

John H. Boswell, Houston, TX, for defendants.

OPINION ON SUMMARY JUDGMENT

HUGHES, District Judge.

1. *Introduction.*

The Resolution Trust Corporation sued five bank directors for credit decisions and

loans made between 1982 and 1986. Gene Phelps, Vernon Bratten, E.L. Breckendorf, Donald Strack, and Milton Havlick, Jr. served as members of the board of directors of the First Equity Savings & Loan, when it was Tomball Savings & Loan. The RTC has alleged they were negligent and breached their fiduciary duty when the bank made loans to friends and relatives of the officers. Because the limitations period resumed running after the Texas Savings and Loan Department appointed a supervisory agent, the RTC's claims are barred. The RTC will take nothing from the officers.

### 2. Facts.

The Tomball Savings Association was chartered in 1973. Most of Tomball's loans at that time were single-family mortgages. By 1984, Tomball Savings had changed its name to First Equity and shifted its focus to high-risk real estate loans. Over time, non-performing assets and foreclosures began to accumulate. In November 1986, First Equity entered into a voluntary supervisory agreement with the Texas Savings and Loan Department. This agreement mandated that all actions taken by the board of directors were at the instance subject to the approval of a state-appointed supervisory agent. The agreement states:

> During the period of supervision, the association, its directors, officers, employees and shareholders shall act in accordance with the instructions ... given by the Savings and Loan Commissioner of Texas ... through the supervisor, and [they] shall exercise only the authority that the supervisor expressly grants.

After further losses, First Equity and the Federal Savings and Loan Insurance Corporation executed a consent agreement in July 1987. In March 1989, the FSLIC seized control of the savings and loan. That same day, Phelps, Breckendorf, Strack, and Havlick resigned from the board; that was all of the defendants, except for Bratten who had resigned in December 1986. The RTC sued the former bank directors for negligence, gross negligence, and breach of fiduciary duty in March 1992 to recover over $10 million in loan losses. The bank directors

have moved for summary judgment on limitations grounds.

### 3. Statute of Limitations, State and Federal.

The Texas statute of limitations for a tort action is two years from the date the cause of action accrues. Tex.Civ.Prac. & Rem.Code Ann. § 16.003 (1986). If the institution's claims are viable under state law when the FDIC takes over, the limitations clock restarts under federal law. See The Financial Institutions Reform, Recovery, and Enforcement Act of 1989, 12 U.S.C. § 1821(d)(14); Federal Deposit Insurance Corporation v. Howse, 736 F.Supp. 1437, 1440 (S.D.Tex.1990). No federal law revives stale state law claims even though the FDIC acquires them. Randolph v. Resolution Trust Corp., 995 F.2d 611, 619 (5th Cir.1993).

Generally, tort statutes of limitations begins to run when the tort is committed. The FDIC was appointed receiver in March 1989. The last bad loan was made in 1986. Unless the statute was tolled, it had expired for all claims before the FDIC became the receiver.

### 4. Adverse Domination in Texas.

The RTC argues that adverse domination abated the statute of limitations. Adverse domination tolls a limitations period as long as a corporate plaintiff continues under the control of the wrongdoers. If a majority of the board members were wrongdoers, the statute tolls. Federal Deposit Insurance Corporation v. Dawson, 4 F.3d 1303 (5th Cir.1993); Howse, 736 F.Supp. at 1441–42. The adverse domination rule applies even when only a minority of the board is sued. Allen v. Wilkerson, 396 S.W.2d 493, 501 (Tex. Civ.App.—Austin 1965, writ ref'd n.r.e.). Limitations will run against a corporation if a disinterested majority of its board members have notice. Allen, 396 S.W.2d at 500.

### 5. The Voluntary Supervisory Agreement.

The directors argue that the limitation of the FDIC's causes of action were not tolled after November 1986. Although they did not resign until March 1989, the directors relinquished control of First Equity in No-

vember 1986, when FSLIC, TSLD, and First Equity entered into a Voluntary Supervisory Control Agreement and Consent Agreement. TSLD appointed a supervisory agent for First Equity, and the board of directors could not act without his authorization and must act at his direction.

In contrast, the supervisory agent could freely exercise his powers without being overridden by the adversely dominated board. There is overwhelming evidence that the board could not prevent the supervisory agent from exercising any of his powers under the agreement. Despite testimony that the supervisory agent is primarily an observer who reports to state regulatory officials, the language of the Voluntary Supervisory Agreement is clear: the supervisory agent was in charge of the savings and loan after October 1986. Of course, an adverse report to the state would result in a seizure of the institution. That the supervisor may have been inept does not extend the limitations period.

### 6. *Conclusion.*

The voluntary supervisory agreement ended the tolling of the statute of limitations. The claims expired in October 1988. When the FDIC placed First Equity in receivership in March 1989, all claims against these directors were stale.

The RTC shall take nothing by them.

### FINAL JUDGMENT

The Resolution Trust Corporation takes nothing from Gene Phelps, Vernon Bratten, E.L. Breckendorf, Donald Strack, and Milton Havlick, Jr.